# JOSEPH D. LANGSTON

*v.*

# ASAPH J. BATES *et al.*

1. SPECIFIC PERFORMANCE — *sale of land by parol.* A parol contract to sell land may be enforced in equity where the vendee has taken possession under the contract, and made lasting and valuable improvements, and paid the purchase money.

2. SAME — *between parent and child for conveyance of land.* A promise or agreement made by a father to a child to convey a tract of land if the child will take possession of the land and improve the same, when followed by possession, and the expenditure of labor and money in making lasting and valuable improvements, may be regarded as resting upon a valuable consideration, and will be upheld and enforced in a court of equity.

3. STATUTE OF FRAUDS — *evidence to take case out of operation, must be clear and certain.* In order to take a case out of the operation of the Statute of Frauds, a parol contract to convey land should be clear and certain in its terms, and established by testimony of an undoubted character, which is clear, definite and unequivocal.

APPEAL from the Circuit Court of Menard county; the Hon. LYMAN LACEY, Judge, presiding.

Mr. T. W. McNEELY, for the appellants.

Mr. E. LANNING, and Mr. N. W. BRANSON, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Asaph J. Bates and his children, heirs at law of Emily Bates, deceased, to enforce the specific performance of a parol contract made by Joseph D. Langston, in 1857, to convey a certain tract of land, consisting of forty acres, in Menard county, to Asaph J. Bates and his wife, Emily. The bill also set up a subsequent agreement made between the parties, under which the complainants claimed to be entitled to a deed for another forty acre tract, adjoining the one in question on the east. On the hearing, the court decreed against the complainants as to the last tract named, and as no cross-errors have been assigned, it will not

be necessary to consider this branch of the case. As to the other tract of land, the court, upon the hearing, decreed in favor of complainants, and the decree is claimed by the defendant in the bill not to be warranted under the pleadings and evidence.

The law seems to be well settled that a parol contract to sell land may be enforced in equity, where the vendee has taken possession under the contract and made lasting and valuable improvements, and paid the purchase money. So, too, a promise or agreement made by a father to a child, to convey a tract of land if the child will take possession of and improve the same, when followed by possession, and the expenditure of labor and money in making lasting and valuable improvements, may be regarded as resting upon a valuable consideration, and will be upheld and enforced in a court of equity. *Bright* v. *Bright*, 41 Ill. 97; *Kurtz* v. *Hibner*, 55 Ill. 514; *Wood* v. *Thornly*, 58 Ill. 464.

But in order to take a case out of the operation of the Statute of Frauds, the authorities all agree that a contract to convey should be clear and certain in its terms, and established by testimony of an undoubted character, which is clear, definite and unequivocal. The reason for this is plain. As is well said by Story, vol. 2, sec. 764: "A court of equity ought not to act upon conjectures, and one of the most important objects of the statute was to prevent the introduction of loose and indeterminate proofs of what ought to be established by solemn, written contracts."

The question to be determined, then, is, whether appellees have established, by the evidence, a state of facts which, under the rules indicated, would authorize the decree rendered in their favor. At the time the arrangement was entered into between Bates and appellant, the land in question was vacant and unimproved. In 1857, Bates erected a house upon the land, and moved upon it with his family, and has remained in the possession thereof ever since, occupying as owner, and it is clearly proven that he has made valuable and lasting improvements upon the premises. Bates, in his evidence, says,

appellant agreed, if he would go upon the land and improve it, he would give it to him and his wife, Emily; that he accepted the proposition, and went upon and improved the property. Shepherd, a witness for the complainants, who was present when the arrangement was said to have been made, testified that he heard appellant say to Bates, if he would sell out where he then resided, and improve the forty acre tract, he might have it. Washbend testifies, that, in 1857, appellant told him he had pursuaded Bates to sell his own land, and take his money and build on the land in dispute, so that Bates' wife could be close home, and that he had given the land to Bates and his wife. Berryhill, in his evidence, stated, that, in 1857, he heard appellant say he had given the land to Bates and his wife in order to have his daughter near him. A large number of other witnesses testified to conversations had with appellant, on different occasions, in which he admitted he had given the land to Bates and his wife.

It is true, some of the witnesses understood appellant to say he had given the land to Bates' wife. Others say he had given it to Bates, while some of the witnesses understood him as saying he had given the property to Bates and his wife. This discrepancy in the evidence does not, however, militate against the real equity of the complainants.

The slight discrepancy in the declarations of appellant, no doubt, arose from the fact that, in his judgment, a gift of the property to one was a gift to the other, or both. Bates had married appellant's daughter, and the obvious intention, no doubt, was to donate the property for the benefit of the family.

If Bates was induced by appellant to go upon the property under an agreement that he would convey to Bates and his wife, or either of them, and, upon the faith of the contract thus made, Bates improved, and by his money and labor rendered it valuable, the appellant, in equity, ought to be compelled to perform his contract. There is no controversy in the case between Bates and the children of his wife, in regard to whether the conveyance shall be made to the one or the other, and appellant can not, in equity, refuse to perform an agreement

because the evidence discloses, in his statements, slight discrepancies in regard to whether the conveyance shall be made to Bates, alone, or to him and his children.

It is true, appellant denies that he made the contract relied upon by complainants, and while there is some evidence in the record that Bates made certain admissions which tend to confirm appellant, yet, when the whole evidence is considered, we are clearly of opinion it is sufficient to authorize the decree.

The appellant, in his evidence, denies making the contract relied upon by the complainants, and says the agreement was, that Bates should have the use of the land for the improvements made, so long as his wife lived; but this is so utterly inconsistent with his undisputed statements made to numerous witnesses, that it can not be adopted as the true theory under which Bates improved and occupied the land. Besides, after the death of Mrs. Bates, in May, 1872, if Bates' rights in the land terminated, it seems strange that appellant made no effort to obtain the possession of the property. In the fall of 1873, Bates leased the land to one Lawson, until the 1st day of March, 1875, and appellant was called upon to draft the lease, and did so, and signed his name as a witness. It seems strange, if appellant owned the land, and was then entitled to the possession, that he would quietly stand by and allow it to be rented for so long a time, and not even intimate to the lessee that he had any rights therein. This conduct on his part not only repels the presumption that Bates' rights in the property terminated upon the death of his wife, but at the same time tends to strengthen and confirm the position of the complainants.

It is said the proof does not correspond with the allegations contained in the bill, but the variance in this regard is so slight that it does not affect the substantial merits of the case, and we can not, on that ground, reverse.

It is also claimed, that James B. Langston, who obtained a deed of appellant for the property before the filing of the bill, is entitled to hold as an innocent purchaser. We perceive no ground upon which this position can be sustained. At the

time this deed was obtained, Bates was in possession of the premises, and his possession was constructive notice to the purchaser of his rights in the property. But in addition to this, the proof shows that James B. Langston had actual notice of the arrangement under which Bates occupied the property.

The decree of the court required the land to be conveyed to the children of Emily Bates. We perceive no error in this. The complainant, Bates, appeared in open court and consented that the deed might be so made. We are of opinion he had the right to do so. We are of opinion the evidence clearly shows that complainant Bates and his wife, Emily, held the equitable title to the premises. Upon the death of Emily her interest descended to her children. Bates could, if he saw proper, sell or transfer his interest to the children, and when, on the hearing, in open court, he consented that all the land should be decreed to his co-complainants, we perceive no substantial reason why that should not be done.

The decree will be affirmed.

*Decree affirmed.*