## WILLIAM T. IRWIN, ADMINISTRATOR,

### v.

## MARY WOLLPERT ET AL.

*Wills—Annuity—Bill by Administrator to Enforce Payment—Real Property—Conflicting Titles—Parol Agreement to Convey—Evidence.*

1. The law does not allow an administrator to engage in litigation to settle conflicting titles. He must take and deal with the title as he finds it.

2. It is well settled that a claim of title based upon a parol agreement must be supported by evidence both clear and satisfactory, particularly when the claim is an old one.

3. Upon a bill filed by an administrator to enforce the payment of an alleged balance of an annuity which was originally charged upon two lots, one of which was conveyed prior to the death of the annuitant, who joined in the conveyance, this court affirms the decree of the court below dismissing the bill for want of equity, the annuitant having had control of and derived all the income from the premises, either by herself or her agents, during her lifetime.

[Opinion filed December 8, 1888.]

Appeal from the Circuit Court of Peoria County; the Hon. S. S. Page, Judge, presiding.

Messrs. Kellogg & Cameron, for appellant.

Messrs. Dan. F. Raum and N. Ulrich, for appellees.

C. B. Smith, J. This is a bill filed by Wm. T. Irwin, administrator of the estate of Christiana G. Young, deceased, against Mary, John and Charles Wollpert, her grandchildren. Christiana G. Young was the widow of George Matthaus Young, who died testate in April, 1873, seized in fee simple of lots one and two, block sixty-six, in Monson & Sanford's addition to Peoria.

By his will George Matthaus Young devised lot (1) to his son, Gottlieb M. Young. in fee, and lot two (2) he devised in fee to Mary, John and Charles Wollpert, minor children of his deceased daughter, Julia C. Wollpert. In a subsequent clause of his will he charges these two lots with a three hundred dollar annuity, clear from all taxes and improvements, to be paid to his wife, quarterly, every year during her life, and provides that in case this annuity is not paid promptly that she may take possession and collect rents for herself.

Christiana Gottlieb Young died in 1886, and Irwin was appointed her administrator. This bill is now filed to enforce payment of, what is claimed, an unpaid balance due of said annuity, and to make it a charge against said lot two; lot one having been conveyed by the deed of the widow herself, her son joining with her, so that no demand can be made against it. It is alleged in the bill that at the time of the widow's death there was a large sum, amounting to $3,000, still due, which had accrued to her as a part of her annuity, and which had not been paid to her nor to any person for her during her lifetime. The answers admit the allegations of the bill except as to there being anything yet due, and as to that they say that the widow, in her lifetime, had been largely overpaid, and that she had, in fact, taken possession of both lots shortly after her husband's death, and either by herself or her agents, had

received all the rents during her lifetime. Susannah Young, wife of Gottlieb M. Young, who was also made a defendant to the original bill, answers that she had a claim against the estate of Christiana G. Young for care, boarding and nursing for a number of years prior to her death, and she also claims in her answer that she had a parol contract with George Matthaus Young in his lifetime to the effect that if she would build a house on lot one, she should have the lot, and that in pursuance of such contract she built the house with her own money at a cost of $2,000, and that by that means made the only rental value the lot had; and she further insists that she never received any rents therefrom nor anything from the mortgage put on it. The bill was dismissed as to Susannah Young and M. Scherff. The case was referred to the master, with direction to take the evidence and report conclusions, which he afterward did, finding against the complainant in the bill, and finding that Christiana G. Young had had the possession and control of both lots either by herself or her agents, and had collected and received rent and profits therefrom largely in excess of her annuity, during her natural life, and that there was nothing due her. Exceptions were taken to the master's report and overruled by the court. Thereupon the complainant asked and obtained leave to amend his bill. The bill was so amended as to allege a *claim of ownership in fee* only, in George Matthaus Young, of lot one (1), at the time of his death and making the will, but that in fact the equitable fee in said lot one was in Susannah Young at the time of the death of George Matthaus Young, by reason of the agreement between the said George M. and Susannah Young, which said agreement was in substance as follows: That in the lifetime of George M. Young, deceased, he made a verbal agreement with Susannah Young, wife of Gottlieb M. Young, now also deceased, to give, grant and convey said lot one in block sixty-six to said Susannah Young, if she would cause to be built a dwelling house thereon, and that the said Susannah Young, in the lifetime of George M. Young, fully performed her part of said agreement by causing the house to be built with her own money, not derived from her husband, at a cost of

$2,000 and that she entered upon and took possession of said house and kept possession of the said house and lot until it was sold under a trust deed in 1879, which had been executed by Susannah Young, her husband, and Christiana G. Young—all joining in the deed.   The amended bill further averred that by reason of such agreement and the building of said house, the equitable fee passed in the lifetime of George M. Young to said Susannah Young, but that said George M. Young never, in his lifetime, performed said agreement by making a conveyance of said lot one to said Susannah Young, nor have his legal representatives since his death.

Wherefore complainant prays that the fact of said agreement to convey may be considered in connection with the relief prayed for in the original bill, and that the said unpaid annuity may be decreed a lien accordingly upon said lot two (2), and for other and further relief, etc.

Mary Wollpert, in her answer to this amended bill, denies every material averment in it, and in addition to her denial pleads the statute of frauds and relies on the same, as against the parol agreement set up in the amendment.

She further answers and says that Christiana G. Young accepted the provisions and terms of the will, and thus treated her husband as the owner in fee of said lot one (1), and that her administrator is now estopped from saying he was not the owner.   Charles and John Wollpert make substantially the same answer as their sister Mary to the amended bill.   We regard this amendment and all proceedings under it as wholly foreign to the original purpose of this bill.   It was an attempt by the administrator to do indirectly what he could not do by a direct proceeding, viz., to settle and adjust the title to lot one as between Susannah Young and her husband or his heirs, he being dead, and none of them then being parties to the bill.   The bill had before then been dismissed as to Susannah Young, and her husband was dead, and if they had children they were not made parties.   The law does not allow an administrator to engage in litigation to settle conflicting titles. He must take and deal with the title as he finds it.   The court could not release lot one from this claim set up, for

unpaid annuity, without first deciding the title was not what
it purported to be, and was not in fact in George Young at
the time of his death. But while we do not recognize the
propriety of this amendment, and do not wish to be under-
stood as giving it our approval, still, we have treated it as
though properly made, and have considered the evidence
offered under it as court and counsel treated it below. We
have carefully studied the evidence in this record and are
entirely satisfied with the finding of the master and the
decree of the court. After the death of her husband, some-
times the widow, Christiana C. Young, herself collected and
received the rents of both lots, and had the actual and exclu-
sive possession of both of them. While she was thus receiv-
ing the whole rents of both lots, her son Gottlieb and his
wife, Susannah, wrote her to make her home with them, at
White Rock, Illinois, whither she went, and from that time
until her death she lived with her son and his wife, until she
died, as a member of the family. After the mother went to
live with her son he collected all the rents on both lots up
to the time of his death, in April, 1881, except as to lot one,
for which he received rents only until 1879, when it was sold,
and after the death of Gottlieb Young the mother still
resided with Susannah until March, 1886, when she died, and
during all that time Susannah Young collected all the rents
from the remaining lot two. The evidence discloses that
Gottlieb and his wife together got all the rents until after the
death of Christiana G. Young, and that they were acting as
her agents with her knowledge and consent, and that they got
the benefit of all this money for the keeping of Christiana.
The mother was undoubtedly a source of great care to her son
and his wife. They were giving her a home and feeding and
clothing her and meeting all her wants. She knew her son
was attending to her property and collecting not only her
annuity of $300 a year, but, in fact, collecting all the rents,
amounting to good deal more than that, and that it was all
appropriated by the family. We think there can be no
reasonable doubt but that she secured all her legal demands
against these lots and much more, at the hands of her son act-

ing for her, and as her agent, with her knowledge and consent.

We do not think the claim made by Susannah Young that she bought lot one in consideration that she would build a house on it, is sustained by the proof. The subsequent conduct of herself, her husband, and of George Matthaus Young and his widow, all strongly contradict that claim. At all events, she claims only through a parol agreement of purchase. The law is well settled that where such a claim of title is set up, the proof must be clear and satisfactory and free from substantial doubt, and more especially so when the claim is a very old one, as in this case, over twenty years having elapsed since it is claimed this parol contract was made. Wood v. Thornly, 58 Ill. 464; Langston v. Bates, 84 Ill. 524. But under the undisputed facts in this case, the hardship to Susannah Young in expending $2,000 to build a house on this lot one (1) is not so great as contended. In the first place, instead of the deed being made to her, as she now claims it ought to have been done, it was given to her husband by will. She, with her husband, shared the rents accruing from the house for a number of years, and until she, her husband and Christiana G. Young all joined in a trust deed, and borrowed $2,000 on the lot, which was paid to her husband. She undoubtedly shared with her husband and her family the benefits of this money. They would still own the house and lot had they chosen to pay the trust deed and redeem the lot. The manifest purpose of this bill is to raise a fund out of lot two (2) to pay a claim set up against Christiana G. Young's estate by Mrs. Susannah Young, for keeping the old lady during her residence with her own son, at his invitation, and covering a period when Gottlieb M. Young, the husband of Susannah Young, was receiving all the rents and profits of both lots one and two, and appropriating them to the support of his mother and family. The proof is that the Wollpert children have never received a cent of rent from the lot given them by their grandfather in 1873, but, on the contrary, they have been compelled to pay some of the taxes.

With the exception of, perhaps, a year or so, Gottlieb Young

and his wife have received every dollar of rent paid on this lot No. 2 from 1873 until 1887, besides also receiving all the rent on lot one from 1873 to 1879, for which they have rendered no consideration except furnishing a home in their own family for Gottlieb's own mother and at their own solicitation. The total amount received by both of them over and above taxes and repairs is shown to be $3,917.55. This amount would allow them six dollars a week for the care and board of Mrs. Christiana G. Young for the time she lived with them, covering a period of about thirteen years.

The proof not only shows that Gottlieb Young and his wife were the actual and only agents of Christiana G. Young and received for her more than her annual annuity, but it also shows that the purpose of this suit is simply to raise a fund to again pay Susannah Young for keeping her mother-in-law.

We are unable to find any merit or equity in the case and the decree of the Circuit Court dismissing the bill is affirmed·

*Decree affirmed.*