RALPH GAINES *et al.*

*v.*

HENRY M. KENDALL.

*Opinion filed October 24, 1898—Rehearing denied December 15, 1898.*

1. STATUTE OF FRAUDS—*oral contract will be enforced if fully performed by promisee.* Taking possession of land, occupying the same as a home and making lasting and valuable improvements thereon under a verbal agreement for conveyance at a future time in consideration thereof, will take the case out of the Statute of Frauds and authorize the enforcement of the contract in equity.

2. CONTRACTS—*rights of parties to oral contract to convey do not depend wholly upon whether promisee will sustain loss.* The rights of the parties to an oral contract to convey land are fixed by the contract

and the subsequent taking possession in pursuance thereof, and do not wholly depend upon the promisee's sustaining so great a loss through the promisor's refusal to perform as will amount to fraud.

3. SPECIFIC PERFORMANCE—*what will not defeat specific performance.* Specific performance of an oral contract by a father to convey land to his daughter and her husband, or either of them, should not be defeated because the evidence fails to show the daughter's express consent to the contract, she having died before the bill was filed, where she and her husband moved upon the land and occupied it as a home for eight years, he spending his money and labor in improving the land, and buying adjoining tracts having an enhanced value to him by reason of their proximity to the land in question.

4. SAME—*effect of testimony showing that promise was indefinite.* The fact that part of the witnesses for complainant testify that the promise to convey was to the complainant, others to the complainant's wife, who was the defendant's daughter, and others to both of them, does not militate against the complainant's rights, where it is obvious that the defendant's intention was to donate the land for the benefit of the family of his daughter and her husband, the complainant. (*Langston* v. *Bates,* 84 Ill. 524, followed.)

5. SAME—*effect where it is uncertain to whom the deed is to be made.* Where the evidence under a bill for specific performance establishes the defendant's duty to convey, the fact that the evidence is not clear as to whether the deed should be made to complainant alone or to him and his son, the only heir of his deceased wife; who was one of the promisees, does not relieve the defendant of his obligation, where there is no controversy between those parties as to how the deed shall be drawn.

MAGRUDER, J., dissenting.

APPEAL from the Circuit Court of Edgar county; the Hon. H. VAN SELLAR, Judge, presiding.

This is a proceeding in chancery, begun in the Edgar circuit court, to compel the specific performance of a contract to convey a tract of land. The bill alleges that Ralph Gaines, one of the complainants, was married to Frankie Kendall in January, 1888; that at that time her father, Henry M. Kendall, who is the defendant, owned a certain 105 acres of land in Edgar county; that in February following the defendant gave this land to the complainant Ralph Gaines and his wife, Frankie Gaines, if they would move upon it and improve it and make it their

home; that he promised complainant and his wife that he would make them a deed to said land as soon as his youngest son, George, became twenty-one years of age, which would be December 10, 1896; that his said wife, Frankie, died fourteen days before said George became of age; that at the time defendant gave them said land they were living on land belonging to the father of complainant; that defendant, on the sixth day of August, 1888, put complainant and his wife, Frankie, into the possession of this land, and told them the land was theirs, and to go and improve it as they desired; that from that date to the present they have held and owned the land; that they have made extensive and valuable improvements thereon; that they bought other smaller tracts, amounting to 100 acres, adjoining this 105 acres, which had a special value only because they adjoined this tract, and that these purchases were made at the instance of defendant; that in November, 1896, Frankie Gaines died; that she left an infant son, Orville, as her only heir; that since her death complainant Ralph Gaines holds the same for himself and the infant son; that after the wife's death defendant began to claim some interest in the land, and on December 30, 1897, gave complainant Ralph Gaines notice to quit and deliver up possession, claiming absolute ownership, and threatening to eject complainants. The prayer is that defendant be required to convey the 105 acres to the complainants in fee simple, and for other general relief. A demurrer was interposed to the bill, but was overruled.

Defendant answered, admitting the possession of the land in the complainants, as alleged, but averring that at the time Frankie Gaines and Ralph Gaines moved onto the land "defendant told them they could have the use of and the right to cultivate said land without the payment of any other rent than the payment of all taxes assessed" against it, and "that they could have the balance of the rent to help them along;" that they entered and held the

land as tenants, only, and that the improvements made
were only such as were needed for their own convenience.
The answer also alleged that by a mutual arrangement,
after the death of the wife Ralph Gaines abandoned all
claims to the land, and it was arranged that he should
be permitted to use and occupy the premises without rent
until March 1, 1898. The Statute of Frauds is set up and
relied upon to defeat the agreement to convey, alleged in
the bill.

A general replication was filed, and much testimony
was taken upon the issues thus made up. Upon a hear-
ing the bill was dismissed, and the complainants appeal.

EADS & EADS, and DUNDAS & O'HAIR, for appellants:

Where a father makes a verbal promise or agreement
with a child to convey to such child a tract of land-if the
child will go and live upon the same, make expenditures
upon and improve it, and this is done in reliance upon
the promise, a court of equity will enforce the specific
performance of the agreement. *Irwin* v. *Dyke,* 114 Ill. 302;
*Smith* v. *Yocum,* 110 id. 145; *Warren* v. *Warren,* 105 id. 568;
*McDowell* v. *Lucas,* 97 id. 489; *Bohanan* v. *Bohanan,* 96 id.
598; *Langston* v. *Bates,* 84 id. 524; *Kurtz* v. *Hibner,* 55 id. 514.

The same rule applies where the promise is made to
the son-in-law and daughter, and the daughter is dead.
*Langston* v. *Bates,* 84 Ill. 524.

It is frequently said that the granting of a specific
performance is a matter of discretion with the court.
But this is a judicial discretion, and not arbitrary, and
is always governed by the evidence and the law, and not
by the caprice of the chancellor. *McClure* v. *Otrich,* 118
Ill. 327; *Hatfield* v. *Wiley,* 105 id. 390.

All the law requires to entitle the complainants to a
decree is to prove the material allegations of the bill
substantially as therein alleged. It is not necessary that
all the allegations of the bill be proved precisely as
charged. *Allen* v. *Woodruff,* 96 Ill. 11.

H. S. TANNER, and J. W. HOWELL, for appellee:

To take the case out of the Statute of Frauds upon the ground of part performance of a parol contract the contract must be established by clear and definite proof, and that complainants took possession under the agreement. *Worth* v. *Worth,* 84 Ill. 442; *Wood* v. *Clark,* 122 id. 464; *Clark* v. *Clark,* id. 388; *Bohanan* v. *Bohanan,* 96 id. 591.

If the improvements made are only such as ordinary husbandry required, or if the rents more than compensated appellant for his expenditures, it is not sufficient to take the case out of the Statute of Frauds. In order to take the case out of the Statute of Frauds appellant must show he will suffer material injury by the failure to perform the alleged contract,—that is, an injury amounting to a fraud upon him. *Wood* v. *Thornly,* 58 Ill. 464; *Clark* v. *Clark,* 122 id. 388; *Bohanan* v. *Bohanan,* 96 id. 591; *Wallace* v. *Rappleye,* 103 id. 229.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The theory of the appellants is, that appellee, soon after the marriage of Ralph Gaines and Frankie Kendall, agreed and promised the former that if he and his wife would go upon this land and improve it, he would make them a deed to it upon his son, George, becoming twenty-one years of age, and that in pursuance of that promise and agreement they entered into possession of the land, occupying it as their home, and made valuable improvements thereon. This, under the decisions of this court, if established by the proof, is sufficient to entitle the complainants to a performance of the contract. (*Langston* v. *Bates,* 84 Ill. 524; *Bright* v. *Bright,* 41 id. 97; *Kurtz* v. *Hibner,* 55 id. 514; *McDowell* v. *Lucas,* 97 id. 489; *Warren* v. *Warren,* 105 id. 568; *Smith* v. *Yocum,* 110 id. 142). These authorities are full to the effect that although the contract was a mere verbal one, taking possession under the agreement and making the improvements as alleged will take the case out of the Statute of Frauds.

The answer and theory of the defense are that no con-
tract or agreement to convey was ever made, but that the
complainant Ralph Gaines and his wife were simply per-
mitted to occupy the premises as tenants, without rent,
except the payment of the taxes. The testimony of the
complainant Ralph Gaines fully sustains the theory of
the bill. He testifies that shortly after he and defend-
ant's daughter were married, in 1888, and before they went
to housekeeping, he and defendant were passing the farm
in controversy, and defendant said, "I suppose you have
heard what I intend to do for you but haven't told you;"
that he then said, "I will tell you: I will give you and
Frankie this 105 acres," pointing to it; that he reserved
a small corner that he mentioned, then; that he had to
get a passageway down to the branch that was running
through the 105 acres; that he said he wanted to reserve
that until he got a better watering place; that he said,
"I will not make you a deed to this farm now, but will
make you a deed when George becomes of age;" that
George is defendant's youngest son. He further testified:
"Defendant knew then that I had a place rented, and he
said, 'I wish you could go onto that right now,'—that is,
the 105 acres. He said Burkhart had a lease on a part
of it and that I couldn't get possession of that until next
year. I had 160 acres rented of my father. I told him
I had wheat sowed and would have to go onto my place.
Then he said, 'I want you to go on this 105 acres just as
soon as you can, and go to fixing it up and improving it.'
He said, 'It is yours, and don't be uneasy; if I should
happen to drop off at any time it is fixed down at Paris.'
He didn't say how it was fixed. He told me to go ahead
and improve it to suit myself,—that it was mine and my
wife's." It appears that Gaines and his wife then moved
on the farm and occupied it about eight years; that they
made improvements, by way of remodeling the barn, set-
ting out a new orchard, building fences, etc., and placed
the farm in first-class condition. The wife died Novem-

ber 26, 1896, and appellee's youngest son, George, came of age a few days thereafter.

Walter Green, who collected the taxes the two years following the marriage, says, speaking of the directions he received from defendant as to the making of tax receipts: "He told me these two pieces belonged to Ralph Gaines. These two pieces were the 105 acres where Gaines lived. Kendall said those two pieces belong to Ralph Gaines. * * * Mr. Kendall also had me correct the tax books," and that the tax books were changed to show them assessed to Ralph Gaines. Ed Hildreth says defendant told him "he had bought that place for Frankie; he said he had given it to his daughter and Ralph." William Jones says: "I had a conversation with Mr. Kendall about this 105 acres of land just before Ralph and Frankie moved there. He said he had given it to Ralph and Frankie, but he did not allow to make them a deed for it just then, but he allowed to give them a deed after awhile." Mrs. Mary Jones, who had worked at the Kendall house, said that at various times she heard Kendall say he had given this land to Ralph and Frankie, and would give them a deed for it when George came of age. Ed McGrew says Kendall told him he had bought this land for his daughter. Henry Baker says he heard Kendall refer to it as Ralph's land in 1891. Fremont Black says defendant told him he had given this farm to Ralph. Charles Walls says that in July, 1888, he heard Kendall say he intended to give this 105 acres to Ralph and his wife, and that he bought it for them. Three of Ralph's brothers corroborate his testimony as to the gift of the land and promise to make the deed. Several other persons testify to transactions which indicate that the defendant always treated the land as belonging to his daughter and her husband. Conceding that the testimony of these witnesses, standing alone, would not be sufficient to establish the alleged agreement to convey, still it does

strongly tend to support the evidence of Ralph Gaines, who does testify to the contract.

All the testimony of the above named witnesses is contradicted by the defendant, who testifies that he did not give the land to Ralph and Frankie Gaines, and never, at any time, stated to any person that he had given that land to them or either of them, and he specifically denies having had the conversations above set forth. It cannot be reasonably said that so many witnesses who, so far as the record shows, are unimpeached and uncontradicted except by the defendant himself, should have made false statements in regard to conversations had with him or have been mistaken as to what he said. The reasonableness of the testimony of Ralph Gaines, viewed in the light of all the surrounding circumstances, seems to us much more apparent than that of the defendant. It not only appears that complainant and his wife expended money in erecting buildings and making other improvements upon the land, putting it in grass, farming it such a way as to improve it, while renting adjoining land upon which to raise annual crops, and purchasing adjoining pieces of land which, detached from this farm, would be of much less value than to a common owner, but we think there is to be gathered from all the evidence in this case clear proof that it was the intention to convey this property to his daughter and her husband, and that he only changed his purpose to do so upon the death of his daughter. In other words, we think it is impossible to read the testimony in this record without reaching the conclusion that if the daughter had survived the period of the son becoming twenty-one years of age the conveyance insisted upon would have been made without objection. We are satisfied the allegations of the bill are sustained by the proofs.

Appellee insists that the evidence fails to show that appellants will sustain so great a loss upon the appellee refusing to comply with the agreement to convey as will

amount to a fraud upon appellants, contending that the
rule in such case is, that unless so great a loss be sus-
tained as to amount to a fraud, the contract cannot be
enforced.   To support this theory he shows that the rea-
sonable rental value of such land in that locality for the
eight years would amount to more than the value of the
improvements placed upon the land.   We cannot agree
with this view of the law applicable to this case.   The
rights of the parties do not wholly depend upon whether
there would have been a loss upon failure to convey as
agreed.   They are fixed by the verbal agreement and the
subsequent act of taking possession and making improve-
ments thereunder, which take the parol contract out of
the operation of the Statute of Frauds.   (See authorities
above cited.)   If Ralph Gaines took possession of the
land under a promise to convey it to himself and wife,
and placed lasting and valuable improvements thereon,
fitting it for a home for himself and family, it cannot
be said the refusal of the defendant to comply with his
agreement would not operate as a fraud upon Ralph
Gaines merely because the value of the improvements
did not exceed the rental value of the land during the
time.it was occupied.

It is said that the evidence of appellants' witnesses
shows the promise of appellee to convey was indefinite,
in that some say the promise was to convey to Ralph,
some to Frankie, and others to both of them.   This dis-
crepancy in the evidence does not militate against the
equity of the appellants.   The obvious intention was, no
doubt, to donate the property for the benefit of the family.

It is further contended that the evidence does not show
that Frankie Gaines ever assented to and accepted the
terms of the contract,· and for that reason it cannot be
enforced.   This contention, as well as that the donee is
not definitely named, is fully met by what is said in the
case of *Langston* v. *Bates*, 84 Ill. 524.   As is said in that case,
if the husband is induced to go upon the property under

an agreement for a future conveyance to him and his wife, or either of them, and upon the faith of the contract thus made he improves the land and by his money and labor renders it more valuable, the appellee ought in equity be compelled to perform his contract. There is no controversy in the case between the husband and his child, who is the only heir of his deceased wife, as to whether the conveyance shall be made to one or both of them, and appellee cannot, in equity, refuse to perform an agreement made with the husband because the evidence discloses slight discrepancies as to whether the conveyance shall be made to the husband alone, or to him and the child.

The contention that after the death of the wife appellant Ralph Gaines abandoned his right to a specific performance of the contract to convey, is untenable. Gaines could not affect the rights of the infant child by any concessions he might wish to make. As to himself, it appears that he and appellee had several conversations regarding a compromise of the matters relating to this land, the last one being on March 15 before the bringing of this suit, but it does not appear that a definite arrangement or compromise was entered into. On the other hand, from the testimony of a witness who seems to be entirely disinterested it appears that the parties on that occasion entirely failed to arrive at any satisfactory settlement of the matters between them.

From a careful review of the whole record we are satisfied the action of the court in dismissing the bill was erroneous. The decree should have been for the complainant, as prayed, for the 105 acres described in the bill, except three acres in the south-west corner of the tract. The decree will accordingly be reversed and the cause remanded, with directions to enter a decree as here indicated.                    *Reversed and remanded.*

Mr. JUSTICE MAGRUDER, dissenting.