## The Sanitary District of Chicago v. Jane S. Martin et al.

### Gen No. 12,718.

1. COVENANT—*when equity will enforce, contained in deed poll.* Equity will uphold and enforce a covenant contained in a deed poll by which the grantee who has taken possession and used the land conveyed, agreed to erect and maintain a levee and to cut and continuously maintain a ditch and outlets for the protection of other land owned by the grantor.

2. SANITARY DISTRICT—*what within corporate power of.* It is within the corporate powers of a sanitary district to acquire land and rights of way upon which to erect embankments and construct ditches for the purpose of protecting lands from overflow resulting from the construction of the channel of such district.

3. ESTOPPEL—*when arises to preclude defense of ultra vires.* The defense of *ultra vires* cannot be interposed against a prayer for specific performance of a covenant in a deed of conveyance where the defendant seeking to interpose such defense has accepted all the benefits of the covenant and cannot restore the *status quo.*

4. SPECIFIC PERFORMANCE—*when will not be awarded, notwithstanding the right thereto is established.* Where the benefit to be derived by the complainant entitled to specific performance would be small and the damage to the defendant arising from specific performance required of it would be great, equity will not decree specific performance but will retain the case and assess the complainant's damages, where the complainant at the time of the filing of his bill was not aware of the obstacles to the enforcement of specific performance.

Bill in equity. Appeal from the Circuit Court of Cook county;

The Sanitary District of Chicago v. Martin.

the Hon. MURRAY F. TULEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Affirmed. Opinion filed November 7, 1906.

**Statement by the Court.** This is a proceeding in equity, begun by appellee Martin for the purpose of compelling the specific performance by appellant of a written agreement contained in a deed from complainant to the defendant.

In October, 1891, the Sanitary District filed its petition to condemn parts of lots three and four of a subdivision of the southeast fractional quarter of section 11, T. 38 N., R. 12 east of the 3rd principal meridian, in Cook county, which were then owned by complainant Martin. After the filing of the petition, negotiations were had and a settlement was finally consummated in accordance with which complainant Martin executed and delivered a deed conveying to defendant the land referred to, amounting, it is said, to about three out of twenty-five acres then owned by her. The consideration was $1,400 in hand paid and the further consideration expressed in the instrument as follows:

"It is understood and agreed by and between the parties hereto and it is a part of the consideration herein that the grantee shall erect and continuously maintain a levee from the high ground upon Section 14 in said township 38 to the high ground in Section 1 in said township; said levee to be north of and parallel to the new river channel which the grantee is about to construct in said township; said levee to be 20 feet wide on the top width, slopes of 1½ to 1 on the outside and 2 to 1 on the inside; the grade to be 20 feet above datum at its lower end and rise with a uniform grade to the Chicago, Santa Fe & California Railway, when its elevation is to be 24 feet above datum, thence it is to rise to a height of 25 feet above datum at its upper end of that side of said levee furthest from the river. Said grantee shall cut and continuously maintain a ditch 3 feet deep and 6 feet wide on the bottom with slopes of 1½ to 1. Said levee and said ditch shall be located wholly on the land of said

grantee. It is understood and agreed by and between the parties hereto and it is a part of the consideration of this deed that said grantee, its successors and assigns, shall provide and continuously maintain from the time when its main channel shall have been constructed such outlets or drains from said ditch as will carry all the water from said ditch into the main channel to be constructed by said grantee, this conveyance being made subject to the road or highway rights. Said grantor in further consideration of the money hereinbefore receipted for releases all claims for damages to lands not taken by grantee herein for its right of way growing out of the construction and maintenance of its main channel and the necessary adjuncts thereto.''

The deed was accepted by the defendant, which took possession of the land conveyed and made use of it for purposes connected with the construction of the drainage canal. It is alleged in the original bill of complaint filed by said Jane S. Martin that the defendant has not complied with the agreements and covenants in said deed contained to be by it performed, that at the time of the settlement and delivery of the deed it was in contemplation of the parties that the channels to be constructed and other work to be done by the defendant, the Sanitary District of Chicago, might injuriously affect other lands not taken belonging to complainant Martin, from which limestone was quarried; that a large opening or quarry made for such purpose then existed on said lands, and that since the construction of the drainage canal and during the spring and summer of 1894 and each year since that time the waters of the Desplaines river have overflowed said lands, so that the quarry thereon has been filled with water and the business of quarrying can no longer be carried on there. The bill prays for a decree requiring defendant to perform specifically the agreement and covenants set out in said deed of conveyance and for such other relief as equity may require.

The answer substantially admits material allega-

tions of the bill, and while denying that complainant's said lands adjacent to that portion conveyed to defendant would or could be materially affected or damaged by the construction of the drainage canal, admits nevertheless that defendant has refused and still refuses to comply with the said agreements and covenants of the deed and to be bound thereby. Defendant alleges that if it had power to carry out the alleged contract and agreements with appellee contained in said deed, the cost would exceed $35,000 or $45,000; that it would be necessary to construct the drain so that it should go under the bed of the Desplaines river to discharge in the drainage canal; that in order to construct the levee required by such alleged contract it would have to be built across the lands of persons whose consent defendant has not been able to acquire and whose lands it has no lawful power to condemn for such purpose as the agreement contemplates; that to carry out the agreement defendant would have to acquire by purchase or condemnation the right to cross the right of way of the Chicago, Santa Fe & California Ry. Co. with the drain and to extend the levee or embankment called for, on to and across the said right of way; that the high grounds upon sections 1 and 14 referred to in said agreement are not upon land ever owned or controlled by complainant, and defendant denies that it has power to condemn any portion of such right of way in order to construct said levee and drains. It is averred that upon the showing thus made it would not be just or equitable to compel the defendant to expend $35,000 or $45,000 to benefit a tract of land which, when the levee and ditch was constructed, would have but small proportionate value compared with the cost entailed upon the defendant to do the work. It denies the possession of any power to condemn land which it does not own, in order to construct such levee and ditch, and generally that the complainant is entitled to the relief prayed.

Nearly three years after filing the original bill a pe-

tition asking for leave to file a supplemental bill was filed by Susan O'Connell. The supplemental bill sets forth that about May 1, 1903, after the filing of the original bill, Jane S. Martin sold and conveyed to Susan O'Connell for the sum of $20,000, half cash, balance secured by notes and trust deed, all of said lots three and four except so much of them as had been conveyed to the Sanitary District by the Martin deed: that by reason of such conveyance Susan O'Connell became entitled to the benefit of the agreements and covenants contained in the said deed to the defendant and entitled to specific performance thereof, and that she adopts the allegations of the original bill and prays specific performance of the covenants and agreements contained in the said deed from Martin to the defendant.

To this defendant answered, denying the alleged conveyance to O'Connell and stating upon information and belief that the transaction was wholly colorable and done with intent of fixing a high price or value upon said land; denying that the alleged covenants referred to in the supplemental bill are covenants which run with the land; that Susan O'Connell acquired any right or interest in the subject-matter of the conditions contained in the said deed of conveyance from Martin to the Sanitary District, and making the same allegations as in the answer to the original bill with reference to the cost of a specific performance of the said agreements and covenants in question and as to defendant's alleged want of power specifically to perform them, of all of which it is alleged Susan O'Connell had notice at the time of her alleged purchase and is not therefore entitled to have the bill retained for assessment of damages.

The Circuit Court found that the defendant, Sanitary District, deemed it necessary in constructing the drainage canal to change and straighten the bed of the Desplaines river, and accordingly entered into the contract with complainant Martin, that if in order to carry

out that contract it became necessary to condemn any rights as to highway or other property dedicated to public or *quasi*-public use the defendant had under the provisions of its act of incorporation full power to do so; that it is estopped from now setting up the defense of *ultra vires,* having taken a portion of complainant's property, changed the channel of the Desplaines river and put itself in a position such that it cannot now restore the status existing when it received the deed from Martin with the covenants and agreements in controversy; that it has now put it out of its power specifically to perform, and that in view of the great cost of specific performance under the changed conditions, it would be inequitable to decree it, even if it was possible to so perform; that equity, however, requires the bill to be retained, the court having jurisdiction of the subject-matter and the parties, to determine the compensation to which complainant is entitled as damages for non-performance by the defendant; that the agreements and covenants of the Martin deed were for the benefit of the land not taken and a part of the consideration for that conveyed; that they were continuing agreements and covenants running with the land; that the defendant by accepting the deed became a party to the agreement in equity; that the defendant cannot be allowed to accept the land so conveyed and retain all the benefit of the deed and yet repudiate the performance of the agreement constituting part of the consideration for the land conveyed and for the damages sustained by the complainant to adjacent property. The chancellor therefore finds that the complainant is entitled to such amount of damages as will compensate for the failure of the defendant to perform the agreement or contract recited in the Martin deed, and fixes the amount upon consideration of the evidence at $5,600 with interest thereon from the date of demand for specific performance indicated by the commencement of the present suit.

Defendant appeals from this decree.

E. C. LINDLEY and P. C. HALEY, for appellant; P. C. HALEY, of counsel.

TENNEY, COFFEEN, HARDING & WILKERSON, JOHN E. WATERS and CHARLES C. GILBERT, for appellees.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

It is first contended in behalf of appellant that the provision contained in the deed from Jane S. Martin "is not a covenant." The reasoning is that a covenant to be operative must be signed and sealed by all the parties to it, and that the deed in question was only signed and sealed by the grantor Jane S. Martin. Whether or not the provision in question contained in a deed poll be regarded as technically a covenant upon which the action of that same could be maintained is, we think, immaterial. This is a proceeding in equity. The deed was given in settlement of condemnation proceedings, wherein appellant would have been compelled, in order to acquire the land, to pay its ascertained value, together with compensation for damages to adjacent land not taken. All the delay, trouble and expense incident to that proceeding, were avoided and damages for lands not taken were waived in consequence of and as a part of this agreement. By its acceptance the grantee agreed to erect and maintain the levee and to cut and continuously maintain the ditch and outlets for the protection of the remaining land from damage. Equity will enforce such manifest intention of the parties without reference to the precise character of the instrument in which it is expressed. By taking possession of and using the land conveyed, the grantee in the deed became a party in equity to its terms and conditions as effectively as if it had affixed its signature and seal. See Brockmeyer v. Sanitary District of Chicago, 118 Ill. App. 49-54; Fitch v. Johnson, 104 Ill. 111-120; Post v. W. S. R. R. Co., 123 N. Y. 580-587.

The agreement in controversy provides that appellant "shall erect and continuously maintain a levee," "shall cut and continuously maintain a ditch," "shall provide and continuously maintain" outlets or drains from said ditch. These are manifestly covenants running with the land. Equity must interpret them as expressing such intention and will enforce and execute them accordingly. Brockmeyer v. Sanitary District, *supra,* and cases there cited. Landell v. Hamilton, 175 Pa. 327-334; Post v. N. S. R. R. Co., 123 N. Y. 580-587. Susan O'Connell, grantee of Jane S. Martin, succeeds therefore to the rights and privileges secured by the covenants in controversy, including the right to relief.

It is insisted in behalf of appellant that the high grounds in sections 14 and 1 referred to in the covenant in controversy were outside of land owned or controlled either by appellant or by appellee, and that to comply with the terms of the said covenant would require occupation of a public highway and of a portion of the right of way of the Santa Fe Railroad, which appellant claims to have no authority to take and that hence it would not be in the power of the Sanitary District specifically to perform said covenants. We are at a loss to understand this contention in view of the language of the Sanitary District Act, which authorizes appellant (section 8) to "acquire by purchase, condemnation or otherwise any and all real and personal property, right of way and privilege either within or without its corporate limits;" and expressly authorizes that when "necessary in making any improvements" which it is "authorized by this act to make, to enter upon any public property or property held for public use, such district shall have the power to do so and may acquire the necessary right of way over such property held for public use," etc. By section 23, appellant is authorized to correct the channel of the Desplaines river, and it appears from the evidence that diversion of the waters of the river from its old bed, at the point where appellee's lands were

situated, was necessary before work could be commenced on the main drainage channel. The chancellor found that a part of appellee's remaining land is subject to overflow "by reason of the construction, maintenance and operation of the main channel of the said district, its adjuncts and appurtenances. and the construction of the new channel of the Desplaines river." It was the apparent intention of the covenant in controversy that appellant should do the work therein agreed upon, to protect said land from such overflows, which are direct consequences of the construction of appellant's channel. Surely to acquire lands and rights of way upon which to erect an embankment and construct ditches for this purpose would be to acquire them for a legitimate corporate purpose directly incident to the work the district was authorized to perform.

It is urged that the condition contained in the deed is not such as a court of equity ought to compel specific performance of, both because of appellant's alleged want of power specifically to perform and because the benefit of specific performance to the Martin lands would be disproportionate to the great cost to the district. Assuming for the argument's sake that there was want of power specifically to perform the covenants in question, appellant should nevertheless, be deemed equitably estopped from interposing it as a defense, after it has obtained by reason of said covenants all it wanted from appellee, including a release of damages to appellee's lands not taken. Appellant has accepted and occupied the land, it has constructed the new channel for the river, which is a continuing damage to the lands not taken, and it cannot now restore the conditions existing when the contract was made. No court of equity can allow appellant to retain the benefit of the deed and repudiate the consideration upon which it was given. As said by Judge Tuley when deciding the case in the Circuit Court:

"To so hold under the circumstances of this case would be not only inequitable, but a travesty upon the administration of justice."

There may be cases, however, where specific performance, although a strict matter of right, cannot on the whole be equitably awarded since the greater equity requires that the complainant be given relief in another way. There is evidence tending to show and not disputed, that the cost to appellant of specific performance in the present case would be under conditions now existing, although of appellant's own creation, in the neighborhood of $60,000, a sum, it is said, considerably in excess of the value of appellee's land involved. It appears from the evidence, and the chancellor finds, that by settlements made with owners of adjacent lands having similar contracts with appellant, the latter has put it out of its power specifically to perform its covenants with Martin if it so desired. This inability to perform was disclosed at the hearing. It entitles appellee to an award of damages in lieu of the performance which has thus through no fault of hers and without her previous knowledge become impossible. We concur, therefore, with the views of the chancellor who found that by reason of the great cost to appellant if compelled specifically to perform the contract in question, when compared with appellee's damages suffered by reason of the failure to perform, it would be inequitable now to decree specific performance, even if such performance were possible. We agree also with the Circuit Court in holding that it would be inequitable under the circumstances to put appellee to her remedy at law in view of the lapse of time and difficulties attendant upon such remedy, and that having jurisdiction of the subject-matter and the parties it was proper to retain the bill and determine the compensation to which appellee is entitled as damages for non-performance by appellant of the agreements and covenants in controversy. The bill for specific performance was properly

brought, but it is equitable to grant other relief in view of conditions disclosed by the evidence, and it is clearly equitable to retain the bill for that purpose. Damages are at best an uncertain and in some respects an inadequate remedy for failure to perform covenants of a deed conveying land. When awarded they do not fill the place of specific performance such as that to which appellee was entitled or supposed she was when she filed her bill. The obstacles which prevent such performance, or at least make it inadvisable, have been disclosed at the hearing. Appellee, so far as appears, was ignorant of them when the suit was brought. Under these circumstances, equity will retain the bill and will award damages. Pom. Eq. Jur., p. 1410 and note; Combs v. Scott, 76 Wis. 662-672; Andrews v. Brown, 3 Cush. 130-133 *et seq.*; Reeder v. Trullinger Co., 151 Pa. St. 287-293; Cushman v. Bonfield, 139 Ill. 219-246.

We discover no reason aside from appellant's own conduct why specific performance could not have been awarded, except that it would now be inequitable and substantial justice can be otherwise done. The right is, we think, as stated by appellee's counsel not unlike the right to the performance of a verbal contract for the sale of land where the consideration for the sale has been paid and the vendee has taken possession and made improvements. Telford v. The Chicago & Memphis Railroad, 172 Ill. 559; Gaines v. Kendall, 176 Ill. 228; C., B. & Q. Railroad Co. v. Boyd, 118 Ill. 73.

Appellant complains that the damages awarded by the decree are excessive. It is unnecessary to review in detail the evidence upon which the finding is based. There is evidence which sustains it, although controverted by witnesses who testified for appellant. We do not find the testimony of some of the experts convincing and are of opinion that the decree is substantially correct. It will, therefore, be affirmed.

*Affirmed.*