JAMES F. TODD

*v.*

BENJAMIN TODD.

*Filed at Ottawa January 20, 1896.*

1. CONTRACTS—*when agreement of legatees fixes meaning of terms used in will.* A contract between the residuary legatees under a will, that one of them, under a bequest of all the testator's railroad stock, should take a certain railroad bond, entitles him to such bond, whatever the term "railroad stock" in the will may mean.

2. RELEASE—*construction of terms of—previous contract controls.* A release by one of the residuary legatees under a will to the other of all his interest as heir or legatee under the will, except the railroad stock belonging to deceased specifically bequeathed to him, will not include a bond which the parties have previously contracted should pass to him under such bequest, as such bond is not a part of the estate, to be controlled by the will or administered.

*Todd* v. *Todd*, 56 Ill. App. 392, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. THOMAS M. SHAW, Judge, presiding.

WINSLOW EVANS, for appellant:

The essential elements of an equitable estoppel, or estoppel *in pais*, are as follows: First, there must be conduct, acts, language or silence, amounting to a representation or a concealment of material facts; second, these facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him; third, the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time of such conduct and at the time when it was acted upon by him; fourth, the conduct must be with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable

that it will be so acted upon; fifth, the conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it; sixth, he must, in fact, act upon it in such a manner as to change his position for the worse. 2 Pomeroy's Eq. Jur. sec. 805.

In this case parol evidence is not admissible to show that the testator, James F. Bonham, intended to bequeath the bond in question to Benjamin Todd under the specific bequest of "railroad stock." 1 Jarman on Wills, 708, 709, and notes; *Stanard* v. *Barnum*, 51 Md. 440; *Kurtz* v. *Hibner*, 55 Ill. 514.

STEVENS, HORTON & ABBOTT, and McCULLOCH & McCULLOCH, for appellee:

Parol evidence is always admissible to apply a contract to its subject matter. *Marshall* v. *Gridley*, 46 Ill. 247; *Wilson* v. *Roots*, 119 id. 379; *Colcord* v. *Alexander*, 67 id. 581; *Smith* v. *Crawford*, 81 id. 296; *Reed* v. *Ellis*, 68 id. 206; *Cornwell* v. *Cornwell*, 91 id. 414.

The same rule applies to wills. *Missionary Society* v. *Mead*, 131 Ill. 362; *Smith* v. *Dennison*, 112 id. 367; Wigram on Wills, 142; *Bowen* v. *Allen*, 113 Ill. 59; *Decker* v. *Decker*, 121 id. 345.

Where the parties in interest have adopted a certain construction of the terms of a contract or will, and acted upon it, the courts will follow that construction, if not inconsistent with its plain meaning. *M. E. Church* v. *Brose*, 104 Ill. 206; *Garrison* v. *Nute*, 87 id. 215; *Hall* v. *Bank*, 133 id. 240; *Fougner* v. *Bank*, 41 Ill. App. 202; *People* v. *Murphy*, 119 Ill. 159; *Burgess* v. *Badger*, 124 id. 288.

The papers executed by the parties did not constitute the contract, but were simply successive acts done towards the execution of a pre-existing parol contract. *Ellis* v. *Sisson*, 96 Ill. 105; *Birks* v. *Gillett*, 13 Ill. App. 369; *Ludeke* v. *Sutherland*, 87 Ill. 481; *Gammon* v. *Huse*, 100 id. 234; *Ruff* v. *Jarrett*, 94 id. 475.

Mr. JUSTICE CARTER delivered the opinion of the court:

This controversy arose on a bill of interpleader filed by the Chicago, Burlington and Quincy Railroad Company, against appellant and appellee, alleging that it had in its possession $3500, the whole of which was claimed by each of the defendants, and asking that they be required to interplead and litigate the matter between themselves. The company paid the money into court, and appellant and appellee went to a hearing of their respective claims to the fund upon their respective answers to the bill. The cause was referred to the master to take and report the evidence and his conclusions to the court. The master found that appellee was entitled to the fund, and the chancellor, after overruling appellant's exceptions to the report, decreed according to the recommendations of the master. This decree was affirmed by the Appellate Court, and the cause is brought here by further appeal.

Appellant and appellee are brothers, and are nephews of James T. Bonham, deceased. Bonham died testate, leaving property, real and personal, valued at upwards of $75,000. By his will he gave the bulk of his estate to appellant. The will then provides: "I give and bequeath to my nephew, Benjamin Todd, (appellee) my railroad stock; also, all my other personal estate I give to my two nephews, James F. Todd (appellant) and Benjamin Todd." The testator owned at his death $2800, at its face value, of the complainant company's stock, $800 of the Quincy Railroad Bridge Company's stock, and a $1000 railroad bond made by the Kansas City and Cameron Railroad Company, dated January 1, 1867, due January 1, 1892, bearing interest at the rate of ten per cent per annum. But he never had the bond in his possession. A. T. Hall, connected with the complainant company as treasurer, had purchased it for him, and it remained in the hands of this company until it was paid to it when due, in 1892,—

about twenty years after the testator's death. The principal and interest aggregated $3500, and constituted the fund in litigation. Bonham was a bachelor, and had he made no will appellant and appellee would have each received one-eighth of the estate. Appellant was apprehensive that appellee and the other heirs would contest the validity of the will, and agreed with appellee that if he would not join in such contest he would make his share equal to one-eighth. Thereupon appellee abode by the will, but there was considerable controversy as well as negotiation between the parties as to the amount which appellee should receive. The evidence is not very clear as to the value of the estate received by appellant.

It is contended in the argument by appellee, that the deceased spoke of the $1000 invested by Hall for him as railroad stock, and that appellant and appellee always supposed it was railroad stock, and that it would pass to appellee under the clause of the will above quoted. It appears that neither the parties in interest nor the executor could get any trace of this item of the personal estate, although they had some information that the testator had made such an investment, but the estate was settled by the executor without any inventory or account of it ever having been made. Appellee contends that he is entitled to the proceeds of this bond by the will and the construction put upon it by both appellant and himself in their dealings with each other; that it was known that this $1000 was invested in railroad securities of some kind, and that it, as well as the railroad bridge stock, is comprehended under the general term "railroad stock," mentioned in the will, as interpreted and acted upon by the parties.

It appears from the evidence that when the executor raised the question as to whether or not appellee was entitled to the bridge stock under the will, appellant said that he knew that it was the intention of the testator to give it to him and directed the executor to turn

it over to appellee, and he joined with appellee in a bond to protect the executor. The executor testified also that appellant directed him to turn over to appellee the $1000 of stock, or whatever it was, when found. This is not denied by appellant, but he insists that he then thought it was railroad stock and that appellee was entitled to it under the will, but that when he found that it was a bond he knew it did not pass by the will to appellee, but passed to both in equal parts, subject to the payment of debts, and that the debts being in excess of the rest of the personal property not specifically devised, he was compelled to pay upward of $2300 in liquidation of such debts, and for that reason he claims the whole. He claims it also under a written release which appellee executed to him. In the settlement in pursuance of the arrangement between them, appellant deeded to appellee's wife fifty-one and one-half acres of land, of the value of about $2500, and in addition to the railroad and bridge stock which he directed the executor to turn over to appellee, he also paid appellee, as he claims, $2000 in cash and in the surrender of appellee's own notes which had theretofore been given for borrowed money. This payment of $2000 is denied by appellee, but appellant is corroborated to some extent by letters from appellee.

The release recited that in consideration of the conveyance of the fifty-one and one-half acres of land appellee released and conveyed to appellant all his interest, as heir or legatee under the will, in the personal property of deceased, except all the railroad stock owned by deceased at his death and which had been specifically bequeathed to him. It will be noticed that the will and release used, in substantially the same terms, the words "railroad stock," and it is contended by appellant that as the will did not carry the railroad bond to appellee, neither did the exception in the release reserve it to him. We do not find it necessary to determine, by construction of the will and reservation in the release, whether the term

"railroad stock" gave the bond in question to appellee or not, notwithstanding we think the evidence clearly shows that both parties so understood it. The decision of the case must turn upon the question of contract between the parties, independently of the release. And in this connection we do not regard the point well taken by appellant that what was said and done antecedent to this release rested in negotiation and treaty only, and that the release and deed must alone be looked to to ascertain the contract between the parties. The release was drawn by appellant and sent to appellee for execution. At that time the railroad and bridge stock had already, in part execution of the verbal contract between them, been turned over to appellee, and we think the evidence shows it had been agreed that the $1000 railroad investment should also belong to appellee, and that appellant had instructed the executor to turn it over to appellee when the written paper should be found. The verbal contract between them had to this extent been executed. Appellant agreed, also, that appellee should have the fifty-one and one-half acres of land. The deed to this land remained to be executed. There was also some controversy about some stock subscribed for, but not issued, of another company, not here in dispute, and some questions of money payment, which, though discussed in argument, we think need not be further considered.

Whatever question, then, there might have been as to the meaning of the words "railroad stock," as used in the will, was disposed of by the agreement of the parties that appellee should have it all, including the $1000 investment, whether in the form of stock or a bond, in arriving at a settlement between them. It is very clear that they both knew, either at the time the release was executed or soon afterward, that the $1000 investment was in the form of a railroad bond, for there was found among the papers of the deceased a letter from Hall, written in 1869, stating that the $1000 was invested in a

bond of that amount of the Kansas City and Cameron Railroad Company, and making inquiry as to its number and whether or not it had been received by mail or express. In speaking of the letter and bond appellant testified: "I first saw it in the spring of 1872. My recollection is that I received this letter very soon after I made my visit to Peoria, in April or May,—either the latter part of April or the first of May, 1872. That was about the time I had the conversation with Ben, here in Peoria. I found this letter, and sent it to him soon after my return. He spoke to me, when I was there, about looking through some of uncle's papers. He asked me if I had any of the old papers. I said I had some of them. He then requested me to look over the papers on my return home, and if I found any touching this bond, to send it to him, and asked me if I would do so. I cannot tell just how long after that conversation and my return home it was that I found that letter and sent it to him, but I am confident that it was not over two or three weeks. I intended to have the proceeds of the bond turned over to him, to make him good as an heir to one-eighth of the estate. I sent that letter to him before he sent to me the instrument marked exhibit 'D,' or the instrument of which exhibit 'D' is a copy. (Exhibit 'D' was the release.) I sent that letter to him before I sent the deed for the fifty-one and one-half acres of land to him."

Appellee testified that appellant sent this letter to him enclosed with the unsigned release. But be that as it may, the agreement between the parties included this bond, and all the known written evidence of its existence was delivered to appellee, and the executor was instructed to deliver the paper to him also, when found. The remainder of the personal property being insufficient to pay the debts, appellant, in order to save the real estate, paid them himself. He did not then, even after the execution of the release, contend that this bond, when found, would either belong in part to him or be

subject to the payment of these debts. This much of
the contract having then been executed, it was wholly
unnecessary to reserve the railroad stock or the bond
from the operation of the release. As between appel-
lant and appellee, the latter held title thereto, not by
virtue of the will, but under the contract, and the stock
and bond were no longer any part of the estate, to be con-
trolled by the will or administered by the executor. The
release, therefore, releasing and conveying appellee's in-
terest as heir and legatee, did not release or convey his
interest acquired by the contract, and the mere fact that
the release unnecessarily reserved the railroad stock did
not disclose an intention to convey the bond. Some rea-
son for reserving the stock may be found in the fact that
there was some railroad stock subscribed for, and which
was or had been in litigation, and about which appellant
and appellee had not at first agreed. The written release
does not purport to be the contract of settlement between
the parties. The contract rested in parol, and the pur-
pose of the release was to carry into effect a part of the
unwritten contract. Appellant himself insisted that it
was a part of the contract, which he carried out, that he
was to pay about $2000 to appellee in addition to the
stock and land; yet this was not stated in the release.
It could not, therefore, be said that the verbal contract
between the parties was merged in the written one, and
that the writing must be looked to as the only evidence
of the real contract between the parties. 1 Greenleaf on
Evidence, sec. 284; *Platt* v. *Ætna Ins. Co.* 153 Ill. 113, and
cases there cited.

That by the contract appellee was entitled to the
proceeds of the bond, is, we think, further shown by the
preponderance of the evidence showing the subsequent
admissions of appellant to that effect. He visited appel-
lee at his home in Iowa in 1883, and appellee and his two
sons testified that in a conversation there appellant asked
appellee if he had heard anything of his lost bond, and

whether or not he still had the Hall letter written to his deceased uncle about the bond, and that appellee replied that he had heard nothing of the bond but still had the letter, and that appellant said: "Keep looking. Something may turn up some time, and if you ever find it, it will be of great advantage to you." This was denied by appellant, but the preponderance of the evidence is, we think, against him.

Finding no error in the record the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT, having heard this case in the Appellate Court, took no part here.