C. E. DEWITT *et al.*

*v.*

EDMUND SHEA *et al.*

203    393
|215    ³559

*Opinion filed June 16, 1903.*

1. NOTICE—*record of deed is notice to subsequent purchasers.* The record of a deed is notice to subsequent purchasers of the grantee's rights and is *prima facie* evidence of the delivery of the deed to the grantee.

2. LIMITATIONS—*when possession is not adverse.* Under the statute in force in 1851 a widow might retain possession of the husband's most usual dwelling house, and the land belonging thereto, until dower was assigned, and her possession would not be adverse to the heirs until dower was assigned.

3. SAME—*possession must be hostile in inception to create title by limitation.* Adverse possession must be hostile in its inception in order to create title by limitation.

4. SAME—*apparent possession of land by one who marries dowress is not adverse to heirs.* One who comes into apparent possession of land by marriage with the widow while she is in possession under her dower rights does not hold adversely to the heirs, in the absence of any proof of a surrender of actual possession to him by the widow; nor does his payment of taxes and improvement of the property make such possession adverse.

WRIT OF ERROR to the Circuit Court of Randolph county; the Hon. WILLIAM HARTZELL, Judge, presiding.

This was an action of ejectment in the circuit court of Randolph county by plaintiffs in error to recover from defendants in error possession of ten acres of land in that county.

It was admitted on the trial that Thomas Horrell was the common source of title. Plaintiffs in error are

his grandchildren and children of John Dewitt, to whom Thomas Horrell, in 1845, made a deed of the premises in controversy, upon which plaintiffs in error rely to sustain their claim of title. This deed was duly recorded, but it is admitted that the plaintiffs in error never had the deed nor knew where it was at the time of the trial. John Dewitt lived on the premises with his wife and children until his death, in 1851, and the widow and children continued to live there after his death. In 1854 Mrs. Dewitt married B. J. Horrell, and he went into occupation of the premises with her, and they continued to live there until her death, in 1896, after which he conveyed the premises, together with other land, to Edmund Shea, one of defendants in error. B. J. Horrell claimed to own the land by virtue of a deed made to him in 1857 by Thomas Horrell, the common source of title, and also by reason of having had possession of the same for more than twenty years. Plaintiffs in error insist that while their mother was alive there could be no adverse possession either by their mother or by their step-father, and that the Statute of Limitations could not begin to run until the death of their mother, in 1896.

The cause was tried by the court without a jury, and after hearing the evidence the court adjudged defendants not guilty of withholding possession of the premises, and entered judgment against plaintiffs for costs. To reverse that judgment plaintiffs now prosecute this writ of error.

H. CLAY HORNER, for plaintiffs in error.

J. B. SIMPSON, for defendants in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The contention of defendants in error that they are innocent purchasers, without notice of any claim of title by any one else, cannot be sustained. At the time Edmund Shea received his deed from B. J. Horrell for an

eighty-acre tract, which includes the ten acres in con-
troversy, the deed from Thomas Horrell to John Dewitt
was on record and notice to all subsequent purchasers
of rights acquired thereunder, and the record was *prima
facie* evidence of the delivery of the deed to the grantee
therein named, and whoever questions it must assume
the burden of proving that it was not delivered. (*Valter*
v. *Blavka*, 195 Ill. 610; *Harshbarger* v. *Carroll*, 163 id. 636;
*Warren* v. *Town of Jacksonville*, 15 id. 236.) The only evi-
dence in the record on this point is the admission of the
plaintiffs in error, the children of the grantee, that they
had never had the deed, and the statement of B. J. Hor-
rell, an interested party, that he received the Dewitt
deed from Thomas Horrell at the same time he received
from him the deed to the eighty-acre tract which he has
deeded to the defendants in error. For the purposes of
this case it is unnecessary for us to pass upon the ques-
tion of the competency of B. J. Horrell as a witness, for,
conceding his competency, there is no evidence in the
record sufficient to overcome the presumption of delivery
arising from the record. Such a conclusion would be a
mere supposition arising from the circumstance that the
deed is found in the possession of the grantor and that
possession not explained.

Defendants in error further contend that their title is
good by limitation; that their grantor, B. J. Horrell, had
adverse possession of the premises for more than forty
years. At the time of his death, in 1851, John Dewitt was
occupying the disputed premises under his deed from
Thomas Horrell, and afterward his widow continued to
occupy them until her death, in 1896. Under the statutes
in relation to dower then in force, what is known as the
"widow's quarantine" gave to the widow the right to re-
tain "full possession of the dwelling house in which her
husband most usually dwelt, together with the outhouses
and plantation thereto belonging, free from molestation
and rent until her dower is assigned." Mrs. Dewitt's

dower never was assigned, and under the statute she was invested with the right of possession of the premises in controversy, which right continued until her death, in 1896. This right accrued to her six years prior to B. J. Horrell's deed and three years prior to his marriage with Mrs. Dewitt, and was defeasible only upon assignment of dower. (*Riggs* v. *Girard,* 133 Ill. 619; *Reuter* v. *Stuckart,* 181 id. 529.) When B. J. Horrell married Mrs. Dewitt he went into occupancy of the premises with her, and they both continued in occupancy thereof until her death. Her possession could never become adverse to that of her children, the plaintiffs in error; (*Reuter* v. *Stuckart, supra;*) and the possession of B. J. Horrell, even after receiving a deed to lands including the premises in controversy, in the absence of evidence to the contrary, does not seem to have been that exclusive, adverse possession, hostile in its inception, which is necessary to create a title by limitation. There is no evidence that the mother of plaintiffs in error ever turned over possession of the premises to B. J. Horrell. She simply married him and continued her possession as before, the children remaining at home until they were grown up. He would naturally appear to be the head of the house and in control of the premises, but to hold that he thereby came into adverse possession would be to require each child, on coming of age, to dispossess the mother and break up the family relations. And the fact that he paid taxes and made improvements on the premises gave him no interest therein. *Reuter* v. *Stuckart, supra.*

We are of the opinion, for the reasons stated, that the circuit court erred in its judgment, and the case will therefore be remanded to that court for further proceedings in accordance herewith.

*Reversed and remanded.*