(No. 20395.—)

EDWIN McCALLISTER *et al.* Appellants, *vs.* LAURA SALLEE McCALLISTER, Appellee.

*Opinion filed December 18, 1930.*

EDWIN JOHNSTON, and L. T. GRAHAM, for appellants.

ELIZABETH MAYO, and DAVID C. WILLIAMS, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Edwin McCallister married Mary Sweeting in the early sixties. She was the owner, by inheritance, of the fee in some real estate, designated in this record as tracts 1 and 2, in Pike county, Illinois, subject to the life estate of her mother, Maria Sweeting Wall, who died in 1911. Mrs. McCallister and her husband from the time of their marriage lived on tract 1, cultivated and improved it and there raised their family of ten children. When Mrs. Wall died the McCallisters took possession of tract 2, lying immediately north of tract 1, and cultivated and improved that 80 acres. All of the lands were in an unimproved state when the Mc-Callisters came into possession. Neither McCallister nor his wife owned any other land or had any other means of support. Mrs. McCallister died intestate in December, 1929, leaving her husband and children surviving. The two tracts of land contained 200 acres. They were sold in the early sixties for taxes to Nathan Kelly, who received a deed therefor.

The original bill in this case was filed in the circuit court of Pike county, April term, 1930, by Edwin McCallister and nine of his children. Levi McCallister and his former wife, Laura Sallee McCallister, were made parties defendant. The bill alleges Edwin McCallister secured title to the lands from Nathan Kelly and has since been in the exclusive, continuous and adverse possession; that after the death of her mother Mrs. McCallister by parol agreement transferred to her husband tract 2; that he has since been in the exclusive possession thereof, has paid all the taxes, has made valuable and permanent improvements

thereon and claimed to own the land. The original bill further alleges that Laura Sallee McCallister married Levi McCallister, a son of Edwin and Mary McCallister, and in 1916 in Pike county obtained a decree of divorce from him and an order for payment of alimony; that she has obtained an order of court for payment to her of the arrearage of alimony, which she claims is a lien on her former husband's interest in the lands. The bill alleges her claim jeopardizes the interests of complainants in the bill and is a cloud upon the title. The prayer is that she be enjoined from levying on any interest her former husband may have in the land and that Edwin McCallister be decreed to be entitled to tract 1 as his exclusive property. The bill was later amended, and as amended it alleged Mary McCallister was the child of William Sweeting, who died testate about 1845, leaving a life estate in the lands described to his wife and the fee to his daughter, Mary McCallister; that Sweeting's widow afterwards married a man by the name of Wall, and that she died in 1911. The amended bill alleges that while Edwin McCallister was a soldier in the Civil War the lands in controversy were sold to Nathan Kelly for taxes; that upon the return of McCallister to his home from the war he took title by deed from Kelly for all of said lands; that about that time an arrangement was entered into by parol agreement between his wife and himself and his wife's mother, Mrs. Wall, by which Mrs. Wall surrendered the possession of the south half of the southwest quarter and the north half of the northeast quarter of the southeast quarter and retained possession of the balance of the lands; that about the time of the conveyance by Kelly to McCallister, Mrs. McCallister transferred complete title to all of the lands by parol and by letting McCallister into immediate possession of the south half of the southwest quarter and the north half of the northeast quarter of the southeast quarter, and such possession as she was able to give of the balance of the lands, for the consid-

eration that Edwin McCallister and Mary McCallister were husband and wife, that McCallister had discharged the delinquent taxes, that he would pay all future taxes, that he would bring all the lands into a condition of productivity, fence the same, improve the same with buildings and otherwise, all of the lands being then more or less unimproved and of little value; that McCallister, relying upon the conveyances, went into the exclusive possession of the south half of the southwest quarter and the north half of the northeast quarter of the southeast quarter and has paid all taxes since taking such possession, has built a dwelling house, barns and other buildings, paid insurance on them for forty years, and expended large sums of money in improving and increasing the productivity and value of the land. The amended bill alleges that after the death of Mrs. McCallister's mother, in 1911, and under the first arrangement between McCallister and his wife, he immediately took possession of the balance of the lands and has ever since paid all taxes and brought the lands from a comparatively raw state to a high state of productivity and made improvements of large value thereon. The amended bill also alleges that McCallister went into possession of the lands at the request and direction of his wife and with her full consent and by way of taking title from her to all of the lands, and that he expended labor and large amounts of money thereon and his wife encouraged him to do so; that his possession has been notorious, uninterrupted and exclusive and his title was never questioned by anyone until questioned by Laura Sallee McCallister in December, 1929; that the latter married Levi McCallister about 1910, obtained a divorce from him in 1917, and in connection therewith a judgment for alimony, which at the present time aggregates about $2300, and by virtue thereof she claims an interest in the lands. The bill further alleges Edwin McCallister is the sole and exclusive owner of all the lands, or that he is the exclusive owner of part, and

that he and the other complainants and Levi McCallister are interested in part; that the title and ownership of all of the lands and the interest of Laura Sallee McCallister should be investigated, declared and adjudicated by the court. The amended bill prays that the court investigate and adjudicate the interests of all the parties; that the court decree Edwin McCallister to be sole owner of all of the premises; that in the event the court finds that he is not the sole owner, the court make such decree and order declaring the interests of the parties as may be just and equitable. Laura Sallee McCallister demurred to the amended bill. The court sustained the demurrer and dismissed the bill for want of equity. This appeal was prosecuted from the decree by the complainants, who allege it was error for the court to sustain the demurrer.

It will be seen that appellants by their amended bill have changed the position they took in the original bill, which was based upon the grantee of the tax title owning the entire land and upon adverse possession. The husband could not acquire title to the premises by purchasing from the holder of a tax deed. (30 Corpus Juris, sec. 513, p. 845; *Lewis* v. *Ward,* 99 Ill. 525; *Oswald* v. *Wolf,* 129 id. 200.) The amended bill bases appellants' claim of title upon a parol agreement between Edwin McCallister and his wife and her mother; that McCallister was to redeem the land from tax sale to Kelly and take exclusive possession of the land; that he took possession of tract 1 at the time of the agreement and of tract 2 upon the death of his mother-in-law. He expended large sums in the improvement of the land, which was known to his wife and all their children, and not until 1929 did Laura Sallee McCallister claim any interest in the land. In brief, the substance of the claim of appellants is that the husband owned the land by virtue of a parol contract with his wife and his mother-in-law; that he took possession pursuant to the contract, made valuable improvements, paid all taxes, and has been in continu-

ous, adverse possession since he went into possession under the contract.

There is no doubt that a parol conveyance of land may be made if the contract is clear, definite and unequivocal and the person to whom the parol contract of conveyance has been made takes possession thereunder and performs all the requirements of the contract, which must be proven by clear and definite evidence referable exclusively to the contract. The proof must be clear and convincing that the promisee went into possession under the contract and made valuable improvements with his own means and upon the faith of the promise. To take an oral promise out of the Statute of Frauds the performance must be proven to be such as to put the party in such situation that it would be a fraud upon him to not require the full performance of the agreement. (*Stephens* v. *Collison*, 313 Ill. 365; *Richardson* v. *Lander*, 267 id. 181.) It is not sufficient to prove that the promisee was previously in possession but it must be affirmatively shown that he took possession under the contract. (*Wolf* v. *Lawrence*, 276 Ill. 11.) It is also necessary that the improvements made were at the cost of the occupant of the premises. (*Richardson* v. *Lander, supra; Geer* v. *Goudy*, 174 Ill. 514.) The improvements relied on to take the case out of the Statute of Frauds must be referable exclusively to the contract and be such as would not have been performed but for the contract. (*Weir* v. *Weir*, 287 Ill. 495.) The improvements must be valuable and must be something more than a tenant who expected to occupy the property for a number of years would make for his own comfort and convenience. *Flannery* v. *Woolverton*, 329 Ill. 424; *Yager* v. *Lyon*, 337 id. 271.

The possession of a husband cannot be adverse to the possession of his wife. (*Blair* v. *Johnson*, 215 Ill. 552.) A wife is not required to deal with her husband as she would with a stranger in order to preserve her rights. (*Wolkau* v. *Wolkau*, 299 Ill. 176.) The husband naturally appears

to be the head of the house and in control of the premises. The fact that he is in possession of his wife's land and makes improvements out of the proceeds of the profits from the land gives him no interest in the title. (*Dewitt* v. *Shea,* 203 Ill. 393; *Reuter* v. *Stuckart,* 181 id. 529.) In view of the relations between husband and wife his possession would be presumed to be permissive and not adverse. (*Kirby* v. *Kirby,* 236 Ill. 255.) In this case the husband and wife lived together many years and raised several children. The wife's land was their only means of support, so far as this record shows. The husband improved and farmed the land and the wife took care of the household duties and their children.

The parol contract relied on by appellant in this case is very vague and indefinite. The amended bill alleges that the husband and wife agreed that he would discharge all delinquent taxes; that he would pay all future taxes and bring the land into a condition of productivity, fence the same and otherwise improve it. A husband by fencing and improving his wife's land does not acquire any interest therein. The conduct of a husband in occupying, managing and operating land of his wife, which land is a part of the farm on which they reside, must be referred to her title. (2 Corpus Juris, p. 75.) Edwin McCallister's wife was the owner of the fee in the land when he married her. They thereafter resided on the land, improved and farmed the same, received the profits of the income from the land, and at no time was there any act of McCallister which denoted a change in the possession of the land. The amended bill does not allege that the improvements were made with McCallister's own means. To take a parol agreement for conveyance out of the Statute of Frauds on account of part performance all acts performed must be referable to the contract and all improvements made with the promisee's own means and upon the faith of the promise. (*Keller* v. *Joseph,* 329 Ill. 148.) Appellants place much reliance upon

*Pasquay* v. *Pasquay,* 235 Ill. 48. That case is easily distinguishable from the instant case and is not in point.

The allegations in the amended bill relative to an oral conveyance from Mrs. McCallister to her husband were insufficient to establish title to the lands in the husband, and we think the demurrer was properly sustained.

The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*