### GRAY et al. v. SCHOONMAKER et al.
### No. 89–D.

District Court, E. D. Illinois.
Jan. 25, 1940.

Isidor Kahn and Welborn & Miller, all of Evansville, Ind., and Stewart A. Pearce, of Carmi, Ill., for plaintiffs.

Smith & Murray and Wham & Wham, all of Centralia, Ill., for defendants.

LINDLEY, District Judge.

Plaintiffs brought this suit to cancel an oil lease upon 120 acres in Section 15, Township 3 South, Range 14 West of the 2nd P.M. in Wabash County, Illinois, given by plaintiff William W. Gray as Trustee, on December 21, 1938, to defendants as lessees, whereby the latter were demised the right to enter, mine and operate the premises for oil and gas, provided defendants should, within sixty days, begin actual drilling on one of the three forty-acre tracts comprising the leased premises and continue with due diligence in an honest attempt to produce oil and that, if defendants should fail to comply with the obligations imposed upon them, the grant should at once terminate. Plaintiffs aver that defendants wholly failed to comply with their obligations; that plaintiffs have demanded surrender of the lease without effect and that it constitutes a cloud upon their title which should be removed. On January 7, 1939, Gray as Trustee, conveyed the premises to his three daughters,—hence their appearances as co-plaintiffs.

Defendants answer inavoidance of any obligation upon their part that subsequent to the execution of the lease, the lessor agreed that if defendants would drill a well on land immediately adjoining the leased premises, and if oil and gas should not be discovered thereon in commercial quantities, plaintiffs would thereupon relieve defendants of the obligation to develop the land covered by the lease and would execute and deliver to defendants in lieu thereof a similar oil and gas lease covering other lands owned by Gray, described as follows: All of Section 14 in Township 3 South, Range 14 West of the 2nd P.M., in Wabash County, Illinois; that defendants drilled the test well as agreed, failed to discover oil or gas and thereby were relieved of the obligation to drill on the land in the lease sought to be cancelled. Defendants aver that they are willing and able to release the executed lease upon Gray's compliance with his contract as aforesaid, but that until such performance is had, plaintiffs are entitled to no relief.

Defendants filed a counterclaim, the averments of which follow: In December of 1938, they had arranged to obtain assignment of oil and gas leases covering some 1,120 acres of land in the Counties of Edwards and Wabash, Illinois, the southeast corner of which is the southeast quarter of the southeast quarter of the northwest quarter of Section 15, which lies immediately next to and adjoins the three forty-acre tracts described in the lease. Their contract for such assignments was conditioned upon the drilling of a test well at some location in this 1,120 acre area, but there is no averment that they had promised to drill such a well. After the execution of the lease by Gray to defendants, he proposed that they drill a test well in the center of the southeast quarter of the southeast quarter of the northwest quarter of Section 15, immediately adjoining his leased land and agreed that if they would do so, drilling to the horizon commonly known as the St. Louis Limestone, and the well should be drilled, he would then execute and deliver to them a lease on the same terms as the lease sought to be cancelled, covering his land above described in Section 14, provided they should then surrender the lease executed by Gray to them. They accepted his proposal, and in reliance upon this agreement, drilled a well at the specified location, near the land leased from Gray, to the specified horizon, which came in as a dry hole. They then offered to return the lease received and demanded a similar lease on the land in Section 14, which was denied. They aver that the conveyances made to the subsequent grantees are subject to the rights of defendants and pray for specific performance or, in the alternative, for damages.

Plaintiffs moved to strike from the answer Paragraph 4, alleging that the rights of plaintiffs other than Gray are subject to those of defendants; Paragraph 7, setting up the subsequent parol agreement, and Paragraph 8, denying plaintiffs' prayer for relief. They filed also a motion to dismiss the counterclaim on the grounds that the parol agreement relied upon is without consideration, violates the parol evidence rule, was merged in the lease of December 21, 1938, and violates the Statutes of Fraud of Illinois.

Thus we see that both the answer and the counterclaim aver that subsequent to the execution of the written lease sought to be cancelled, the lessor therein and defendants entered into a parol agreement whereby it was agreed that the test well, made a condition to the assignment to defendants of leases upon the 1,120 acres hereinbefore described, which, so far as the pleadings show, could have been drilled at any point on the 1,120 acres, should be drilled in the extreme corner thereof directly adjoining the land leased by Gray to defendants. So far as the pleadings disclose, defendants were under no legal obligation to drill this well in any part of the territory. Rather, they had the option, if they desired to secure the assignments, to drill a well at any point on the 1,120 acres. As a part of the parol agreement, it is said, Gray promised defendants that if they would drill a test well in that corner of the land, upon which they had the option to drill, nearest his leased land to a certain horizon and same should prove to be of no value, he would thereupon accept a return of the lease, and deliver and grant, in lieu of it, a lease upon similar terms of the lands in Section 14. Defendants aver complete performance of this contract upon their part.

■ It is apparent that the parol contract was made upon a valuable consideration. Defendants were under no obligation to drill at all. Were they to drill, it would seem to be to their disadvantage to proceed at an extreme corner of their large tract rather than near the center thereof, but whether such is the case, is immaterial. They promised to do something which they were not bound to do, in consideration of Gray's agreeing to lease them other land, if the well they drilled should be dry. It was an obvious advantage to Gray to have the test well drilled in territory immediately adjoining his own land. So the contract included an obligation upon defendants to do something which they were not bound to do in consideration of the resulting benefit to Gray, and in consideration of this benefit to him, he made an agreement to deliver to defendants a similar lease upon other land. Thus all the elements of a valid contract are present.

■ The further question remains of whether such an agreement can be enforced in view of the Statutes of Fraud of Illinois, which provide that a contract for the sale of land shall be binding upon one agreeing to sell only, in case a written memorandum thereof is signed by the party sought to be charged. Smith-Hurd Revised Statutes, c. 59, § 2. A contract for the execution of an oil lease is within this statute, as it involves a contract for the conveyance of a freehold. Carter Oil Co. v. Owen, D.C., 27 F.Supp. 74, and Illinois cases there cited. Consequently, if there were no further averments, the statute would be a complete bar to defendants' counterclaim.

■ But in Illinois the effect of the statute is avoided by performance upon the part of the vendee. When one party has knowingly aided or permitted the other to do acts in partial performance of the agreement, in reliance upon the same, and such acts, would not have been done in the absence of the contract and are of such nature as to change the relationship of the parties and to prevent a restoration of their former status, the courts of Illinois say, it would be a virtual fraud upon the part of the vendor to interpose the statute as a bar to the completion of the contract and thus secure the benefits of the acts done in partial or complete performance while the other party loses all advantage of the bargain and is left without adequate remedy for its failure. To prevent success of such a fraud, courts of equity interpose and compel completion of the contract. Barrett v. Geisinger, 148 Ill. 98, 35 N.E. 354; Quinn v. Stark County Telephone Co., 122 Ill.App. 133; Pomeroy on Specif.Perform. Sec. 104; Ropacki v. Ropacki, 354 Ill. 502, 508, 188 N.E. 400; Fletcher v. Osborn, 282 Ill. 143, 147, 118 N.E. 446, L.R.A.1918C, 331; Telford v. Chicago, Paducah & Memphis R. R., 172 Ill. 559, 50 N.E. 105; Chicago, Burlington & Quincy R. R. v. Boyd, 118 Ill. 73, 77, 7 N.E. 487, et seq.; Hall v. Peoria & Eastern Ry. Co., 143 Ill. 163, 169, 32 N.E. 598, et seq.; Gaines v. Kendall, 176 Ill. 228, 236, 52 N.E. 141; McClure v. Otrich, 118 Ill. 320, 328, 8 N.E. 784; Western Union Teleg. v. Chicago & Paducah R. R., 86 Ill. 246, 252, 29 Am.Rep. 28; Dunn v. Berkshire, 175 Ill. 243, 249, 51 N.E. 770; Clancy v. Flusky, 187 Ill. 605, 609, 58 N.E. 594, 52 L.R.A. 277; Gladville v. McDole, 247 Ill. 34, 40, 93 N.E. 86, et seq.; Willis v. Zorger, 258 Ill. 574, 581, 101 N.E. 963, et seq. Under the averments of the counterclaim, therefore, defendants, in reliance upon the promise of Gray, have drilled an oil well they were not bound to drill and not only partially but

fully have performed their part of the parol agreement, thus preventing the effective interposition of the statute as a bar.

 Plaintiffs attempt to distinguish the performance averred from that usually held sufficient to avoid the statute on the ground that the performance relied upon by defendants was not upon the land as to which specific performance is now sought. True, partial performance must be with reference to the contract relied upon. But, under the averments of the counterclaim, the performance of defendants was with reference to the subject matter of the contract, and the doctrine laid down by the text writers and by Illinois courts applies with full force to the situation presented. It is as if A, having given a lease upon tract (x) to B, should say to the latter, "if you will drill a well, as you have the option to do, on tract (y) next to land which I own and it proves to be of no value, then I will lease to you tract (z) which I own and you may surrender the lease on tract (x) and be relieved of the obligations thereof." I find no requirement in the law that the acts done in performance of such a contract must have been done on the land proposed to be conveyed when the performance has been completed. So to hold would do violence to the principles of equity involved.

 Nor am I impressed with the contention that the agreement should be held void because in violation of the parol evidence rule. That rule does not prohibit all subsequent or even contemporaneous agreements, but is subject to the qualification that a valid specific parol agreement, containing additional promises made upon additional considerations, where the parties' minds have effectually met, may be shown where it appears that the written instrument was not intended to be a complete and final statement of the whole transaction between the parties. Fuchs & Lang Mfg. Co. v. Kittredge & Co., 242 Ill. 88, 89 N.E. 723; Murphy v. Schnell, 248 Ill. 182, 186, 93 N.E. 738; Todd v. Todd, 159 Ill. 408, 415, 42 N.E. 849; Scholbe v. Schuchardt, 292 Ill. 529, 534, 127 N.E. 169, 13 A.L.R. 247. The rule forecloses proof of a contemporaneous parol agreement relating to the same subject matter. It does not foreclose evidence of a subsequent parol agreement containing new promises upon new considerations. Furthermore, waiver of performance of covenants and conditions may be shown by parol even though the instrument is under seal. Sanitary Dist. of Chicago v. Chicago Title & Trust Co., 278 Ill. 529, 116 N.E. 161.

 It may well be that some of the averments of the answer and counterclaim are not strictly and technically proper. The two pleadings are not most skillfully drawn. But upon the trial, the court will be able to protect plaintiffs from any incompetent evidence. The present rules contemplate liberality in construction of pleadings, and I am not disposed to disapprove them upon any strictly technical basis. Defendants have stated an adequate defense and a valid claim.

 Plaintiffs complain of the general allegation of damages in the alternative prayer for relief. This objection is well taken. Though defendants are not bound to plead evidence, they should state as facts the elements of their alleged damages in order that the court may determine whether a legal right to recover the same results. This accords with the intent and spirit of Rule 9. The averment as it stands is a mere legal conclusion of law that defendants have been damaged.

The motion to dismiss the alternative prayer will be allowed and defendants may have fifteen days within which to amend such prayer. In the absence of such amendment, the counterclaim will stand upon the original prayer for relief alone. In all other respects the motions to strike portions of the answer and the motion to dismiss the counterclaim are denied.