**GRAY et al. v. SCHOONMAKER et al.**

**No. 7547.**

Circuit Court of Appeals, Seventh Circuit.

May 22, 1941.

Rehearing Denied June 13, 1941.

See, also, D.C., 30 F.Supp. 1019.

June C. Smith, Hugh V. Murray, Jr., and Wham & Wham, all of Centralia, Ill., for appellants.

Floyd E. Thompson and Anan Raymond, both of Chicago, Ill., Wm. C. Welborn, of Evansville, Ind., and Julius C. Kern, of Carmi, Ill., for appellees.

Before EVANS and SPARKS, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

From a decree of the District Court, directing surrender and cancellation of a certain oil and gas lease upon 120 acres of land in Wabash County, Illinois, and dismissing for want of equity a counterclaim of defendants, seeking specific performance of an oral agreement on the part of plaintiffs to execute a certain oil and gas lease on a separate 288 acre tract of land, defendants appeal.

Plaintiff William W. Gray, as trustee of the estate of Allen Gray, deceased (hereinafter referred to as plaintiff or Gray), and others to whom he had later conveyed some of the real estate here in question, filed their bill seeking to cancel and remove as a cloud upon their title a certain oil and gas lease given by plaintiff to the defendants on December 21, 1938, covering 120 acres, lying in Section 15, Township 3, South, Range 14 West, in Wabash County, Illinois. As a basis for such cancellation plaintiffs asserted failure on the part of defendants to perform a certain drilling covenant contained in the lease. Defendants answered, admitting their failure to perform the drilling covenant, but alleged that plaintiffs had excused performance in consideration of defend-ants completing a test drilling upon adjoining lands (not owned by Gray) which developed a dry hole. Defendants further alleged the plaintiffs had in further consideration of the drilling of the test well and in lieu of the lease upon the 120-acre tract agreed to give them another lease covering the 288-acre tract referred to and located in Section 14, adjoining said Section 15; that although they had offered to release the 120-acre tract, in return for a like lease covering the 288-acre tract, plaintiff had repudiated his agreement and refused to give the lease. The asserted agreement covering the 288-acre tract was concededly an oral agreement and defendants relied upon performance to remove it from the operation of the Statute of Frauds. The performance relied upon was the drilling of the test well on land adjoining the 120-acre tract.

The facts: In November, 1938, the defendants who were engaged in the oil business entered into certain negotiations with the plaintiff, trustee as aforesaid, who was then the owner of a tract of some 1,048 acres of land commonly known as the Gray Farm, and located in Wabash County, Illinois. This land included both the 120-acre and the 288-acre tracts heretofore referred to. Defendants' negotiations with plaintiff also contemplated the acquiring by defendants of other leases, notably one from Edith B. Helm, who owned some 700 acres, lying both immediately south and immediately north of the Gray Farm. Included in the Helm tract was the entire northwest quarter of Section 15, which had already been leased to one George Negley and others. Controversy exists as to the character and extent of the conversations between plaintiff and defendants, defendants asserting that plaintiff agreed on numerous occasions to lease his entire tract to defendants, and plaintiff asserting to the contrary. In any event, the transactions took form by the defendants' obtaining an assignment of the Negley lease upon the Helm land in the northwest quarter of Section 15 (and other lands), and by the defendants' obtaining from Mrs. Helm an oil and gas lease upon her lands not then under lease. The proposed Gray lease to the defendants, whatever its extent, was dependent upon defendants' procurement of the Helm and Negley leases. After obtaining contracts with Helm and Negley, defendants then called upon Gray to perform. After considerable bickering, Gray on December 21,

1938, tendered to defendants a lease upon the 120-acre tract heretofore referred to, but informed defendants that he would not at that time execute a lease upon the 288-acre tract in Section 14. This latter tract had in the meantime taken on added interest by reason of the discovery of a producing well across the river in Indiana. The tendered lease provided for the drilling of test wells upon the 120-acre tract.

The Negley lease which was being assigned to defendants covered in excess of 1,000 acres, including the northwest quarter of Section 15, aforesaid, and while not containing an affirmative covenant to drill a test well, provided for forfeiture in the event such a test should not be commenced upon said tract within thirty days. The Helm lease, likewise, contained no affirmative drilling commitment, but provided for forfeiture in the event lessees should not commence the drilling of a test well within 120 days on the "Cole Farm." The "Cole Farm" consisted of about 280 acres already covered by the Negley lease, and included the northwest quarter of said Section 15. The 120-acre tract referred to, and covered by the Gray lease, consisted of three 40-acre tracts—the northeast quarter of the southwest quarter, the southwest quarter of the northeast quarter, and the northwest quarter of the southeast quarter of Section 15. It will thus be seen that the "Cole Farm" cornered into the Gray 120 acre tract.

After considerable controversy, defendants accepted the Gray lease on the 120-acre tract, and as the District Court found, entered into an oral understanding and agreement whereby Gray informed defendants that he would relieve them of the covenant to drill a test well on the 120-acre tract, if they would proceed with and complete a test well in the southeast corner of the southeast quarter of the northwest quarter of Section 15 (Cole Farm), with the further proviso that if such test well proved to be dry he would then give defendants a lease upon the 288-acre tract aforesaid. Defendants proceeded with the test well, at approximately the location agreed upon, adjacent to the Gray land, and the same proved to be dry. The defendants thereupon called upon Gray for performance of his oral agreement to give them a lease upon the 288-acre tract which he declined to give. Defendants rely upon the drilling of this test well to remove the oral agreement from the operation of the Statute of Frauds.

The District Court's findings of fact covered the foregoing, but much more elaborately and in much greater detail. Defendants do not object to any of the lower court's findings except Finding No. 11, set forth in full in footnote.[1] Under

[1] 11. Though defendants were not bound to drill a well on the Negley block, but rather had an option so to do, it was a condition to their acquisition of title to the Negley leases that a well be drilled. The location was a matter of their own choice, and they made their selection, fixed the site of the well and started work on it, before Gray promised on December 21 to lease them Section Fourteen if they would drill at the chosen spot. They had already seen fit to exercise their option to drill, in order to perfect their title, and what they were then doing and what they thereafter did was done in order to comply with their obligation to drill if they wished to perfect their title. Having seen fit to embark upon performance of this optional obligation, what they did in completing its performance was done under it and in consideration of the agreement that by so doing they would acquire the Negley leases. The acts so performed were no consideration for Gray's promise at that time to lease Section Fourteen; rather this specific promise was without consideration. More than that, the performance resulting from the drilling was not performance of something they were bound to do for Gray; it was performance of an optional contract with Negley, et al. Furthermore, they had stipulated with Mrs. Helm in the lease she gave them that if no well was commenced on the Cole farm within one-hundred and twenty days, the lease should be void. The optional obligation to drill on that farm was one to her, made before the agreement of Gray to lease Section Fourteen, if the well being drilled should be dry, and drilling the well was necessary to keep her lease alive. Hence the drilling could not supply the performance necessary to remove the bar of the Statute of Frauds from their oral contract with Gray. Because of lack of consideration and because of the Statute of Frauds, defendants' suit must fail. It is unnecessary to consider the question of whether in the earlier negotiations, between Gray and defendants, there was consideration for Gray's promise to lease Section Fourteen, for, even were consideration present, there is nothing to remove the bar of the statute as to any such parol agreement.

this finding the District Court concluded that under the Negley lease defendants, while they were not obliged to drill a test well had an option to do so, and that the location thereof was a matter of their own choice and, having selected the location prior to the execution of the Gray lease and having exercised their option to drill, that the same must be held to have been located and drilled under the terms of the Negley lease and not in pursuance of the Gray agreement. It is to be noted that the contract for drilling was entered into and the actual drilling commenced some four days before the execution of the Gray lease. While the drilling was optional, it was necessary for defendants to drill the test in order to come into full enjoyment of the Negley leases. The District Court held that neither the drilling nor the location was any consideration for Gray's oral promise, but rather the same was without consideration and that such drilling could not be relied upon to take the oral contract in reference to the 288-acre tract out of the operation of the Statute of Frauds.

The Court also held that there was an obligation under the Helm lease to drill upon the "Cole Farm" and concluded that the oral contract between Gray and defendants which was calculated to relieve defendants from drilling a test well upon the 120-acre tract and by which it was contemplated that Gray would give a lease upon the 288-acre tract, was unenforcible by reason of the Statute of Frauds and that there had been no such performance that would operate to remove the binding effect of the Statute of Frauds.

It is to be noted that the District Court had, prior to the trial, denied a motion of the plaintiffs to strike defendants' counterclaim, and in ruling upon such motion filed a written opinion, reported in Gray v. Schoonmaker, 30 F.Supp. 1019. In this opinion the court considered at length the legal questions raised by defendants' counterclaim. The court there reviewed the authorities and discussed the performance necessary to relieve an oral contract from the operation of the Statute of Frauds of Illinois, Smith-Hurd Stats.Ill. c. 59, § 2. We think the conclusions there reached on the legal aspects of such oral contract and the character of performance necessary to take it out of the statute are sound and we make reference thereto.

Defendants assert that although their drilling of the test well on the "Cole Farm" constituted an exercise of the "Optional Obligations" of both the Negley and Helm leases, and also constituted a fulfillment of their contract for drilling, yet it at the same time was a part performance under the oral contract with Gray and was a fully executed consideration on their part. The District Court after trial concluded that the entering by defendants upon a drilling contract and the commencement of operations for the test well prior to their actual agreement with Gray must be held to have been in pursuance of their option under Negley and Helm and for the purpose of perfecting their title to such oil and gas leases. Having thus embarked upon their optional obligations, what they did in completing same was likewise thought to be under the Negley and Helm contracts, and not referable to the oral agreement with Gray.

We are of the opinion that the conclusions reached are sound. We think, as the District Court thought in its previously announced opinion on the pleadings, that while part performance in order to relieve from the operation of the Statute of Frauds need not necessarily be performance upon the land in question, yet such part performance must necessarily have a direct and positive relation to the subject matter of the oral agreement and must unquestionably have been carried out in furtherance thereof. Where, as here, the defendants in drilling the test well were acting harmoniously with the provisions of three separate agreements—two in writing, one in parol—it cannot with assurance be said that they were acting in pursuance of the parol agreement. See Gray v. Schoonmaker, supra, and cases there cited; also, Havana Press Drill Company v. Ashurst, 148 Ill. 115, 35 N.E. 873; Strange v. Carrington, Patton & Co., 116 Ill.App. 410; Cuneo Press v. Claybourn Corp., 7 Cir., 90 F.2d 233.

After the completion of the test well and on April 12, 1939, defendant Schoonmaker in a letter to plaintiff discussed the results of the test and made reference to the 288-acre tract. There is nothing in this communication from which it might be concluded that defendants had drilled the test well in reliance upon a promise by Gray for a lease on the 288-acre tract. The following language contained in such letter rather indicates to the contrary: "Since we have lost about $15,000.00 on our first test, I believe we should try once more before we run out of money, and I would greatly appreciate any consideration

you might give us in this matter. I believe we can work out a deal that will be fair to both of us and would like you to advise me if you expect to be in Evansville within the next week or two."

On April 7, 1939, defendant Turbeville wired plaintiff: "Helm well tested sulphur water in McCloskey, at 3000 feet, but drilling ahead to complete contract with Negley Stop Showings encountered make us believe that we can get oil on east 288 acres your farm and we are ready to make new contract on this acreage for drilling immediately in line with our conversation Stop Please advise." Here we find Turbeville saying that they were drilling ahead to complete contract with Negley.

■ It is to be observed that the Helm lease was acquired by defendants on December 7, 1938, and the assignment of the Negley lease was acquired December 8, 1938, and that the Gray lease sought to be cancelled was dated December 21, 1938, and the oral contract, although extending back over a considerable period of time was actually consummated about the latter date. Both the Helm and Negley leases required test wells or forfeiture of leases. Negley also provided for forfeiture of $1,600 on failure to drill. These pertinent facts lend support to the court's findings, and it was well within the bounds of the testimony and documentary proof for the District Court to conclude that the acts of defendants in drilling the test well on the "Cole Farm" were referable to the Negley and Helm leases rather than to an oral contract asserted by defendants to have been consummated four days after the well had been located, the drilling contract had been let and the drilling equipment moved to the scene of the well. It was held by the Supreme Court of Illinois in McCallister v. McCallister, 342 Ill. 231, 173 N.E. 745, 74 A.L.R. 213, that the acts relied upon to take a case out of the operation of the statute must be referable exclusively to the contract and be such as would not have been performed but for the contract, citing Weir v. Weir, 287 Ill. 495, 122 N.E. 868.

■ While appellees argue that the evidence failed to establish any oral contract with Gray this was a fact question and we accept the District Court's conclusions on this question without discussion. We are of the opinion, however, that the Statute of Frauds constitutes a complete barrier to enforcement of the contract. The decree of the District Court is affirmed.