(No. 13964.—Decree affirmed.)

KATHERINE D. BENT, Appellant, *vs.* CLARENCE A. BURLEY *et al.* Appellees.

*Opinion filed October 22, 1921—Rehearing denied Dec. 8, 1921.*

1. SPECIFIC PERFORMANCE—*what proof will not justify specific performance of oral contract to convey land.* In a suit against executors and devisees to compel the performance of an alleged oral agreement of the testator to convey his property to the complainant, who as a child was taken into the family of the testator, where she lived until her marriage, testimony of the child's mother that the testator said, when he took the child, that he would take her as his own and she would have all he had, will not, alone, justify a decree for specific performance.

2. SAME—*what proof is necessary to take oral contract out of Statute of Frauds.* In order to take an alleged oral contract for a conveyance out of the Statute of Frauds the contract must be clear and definite and unequivocal in its terms and must be clearly and satisfactorily proved, and it is indispensable that the acts done in performance of the contract shall be referable to the contract, alone, and shall have been done in performance of it.

3. SAME—*executors or devisees may plead Statute of Frauds against testator's alleged contract to convey.* Executors, legatees and devisees may plead the Statute of Frauds in a suit to compel the specific performance of an alleged oral agreement by the testator to give all his property to the complainant, whom he took in his family to raise from childhood.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

ALBERT H. FRY, for appellant.

ISAAC B. LIPSON, and EDWARD R. HILLS, (JOSEPH A. GOLDE, of counsel,) for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

February 23, 1887, Michael Flanagan died leaving a widow and three children, Joe, James and Katherine. A fourth child, John, was born four months after his death.

His estate, consisting of real and personal property, did not exceed $15,000 in value. Shortly after his death an arrangement was made between Mrs. Flanagan and Mr. and Mrs. John Connors, the latter a sister of Mrs. Flanagan, under which the Connors took Katherine Flanagan (now Katherine D. Bent, appellant,) into their home, where she lived until her marriage, in 1908. In 1916 Mrs. Connors died testate and by her will gave all her property to her husband. In 1917 John Connors died testate and by his will distributed an estate, consisting of real and personal property, worth approximately $100,000 among a large number of persons, most of whom were relatives of Mr. or Mrs. Connors. Appellant filed her bill in the superior court of Cook county, alleging, among other things, that on March 23, 1887, a contract was entered into by and between John Connors and Catherine Connors on the one side and Mary Flanagan, mother of appellant, on the other side, wherein it was agreed that Mary Flanagan would renounce, waive and release any and all claim to the filial affection and any claim to the custody and control of appellant, and that in consideration of said release the Connors agreed to clothe, educate, support and provide for appellant as if she were their own child, and to execute wills so that at the death of the survivor of them all of their property, both real and personal, would become the absolute property of appellant. The bill further alleged performance of the contract on the part of appellant and her mother and breach of the contract on the part of the Connors, and asked for specific performance of the contract. The executors and legatees, who were made parties defendant, answered the bill, denying the existence of the contract, setting up the Statute of Frauds and averring breach of the alleged contract by appellant. The cause was referred to a master, who took proof and made his report, finding that there was no contract and recommending that the bill be dismissed for want of equity. Objections were filed to this report, the objections were

overruled and the report was filed. The objections were ordered to stand as exceptions. The exceptions were over-ruled and a decree entered in accordance with the report of the master. This appeal followed.

Mary Flanagan, mother of appellant, testified that at the time of her husband's death John Connors was forty-five years old and Catherine Connors was thirty-two; that they had no children and that they requested her to let them take James and Katherine to their home and bring them up as their children; that the Connors kept the two children at their home most of the time for several weeks and that finally it was agreed that Katherine should go to live with them; that she was then seven years of age; that the Connors agreed to educate Katherine and to bring her up as their own child; that Mrs. Connors said "she was going to take her home with her and she would have all she had;" that Mr. Connors said "he would take her as his own,—that she would have all they had;" that Katherine made her home with the Connors until she was twenty-eight years old; that she referred to them as uncle and aunt; that they sent her to school until she was past twenty years of age; that witness visited Katherine at the Connors home and that Katherine visited her at her home until about the time Katherine graduated, when witness had trouble with Mrs. Connors; that after this trouble, which occurred six or seven years before Katherine was married, witness did not visit at the Connors home; that she at no time during the lifetime of the Connors told appellant about the agreement of the Connors to leave their property to appellant.

Other witnesses testified that appellant lived at the Connors home from the time she was a little child until she was married; that she appeared to be a member of the family and was treated much the same as if she were their own child; that John Connors spoke of her as a child whom they had raised and that she would be the principal bene-ficiary of his estate. Several witnesses spoke of quarrels

between appellant and the Connors. Appellant married contrary to their wishes in 1908 and an estrangement arose at that time. It does not appear that they were reconciled. One witness testified that appellant was ordered from the Connors home at that time and told not to return. Appellant denied this but admitted that the marriage was not satisfactory to her uncle and aunt. It does not appear from the evidence that she returned to the Connors home until the time of her aunt's funeral, eight years later. Her uncle died in 1917, and the record does not show that she visited him between the time of her marriage and his death. No witness testified that there was any specific agreement by the Connors to give appellant all their property by deed or by will.

By repeated decisions this court has announced the principles governing cases of this character. The question to be determined is whether a contract and its performance by appellant are sufficiently proved to warrant decreeing specific performance. It may be conceded that the testimony shows that the Connors intended to care for appellant as their own child and to provide for her by will or otherwise at their death, but it is equally clear that the fact that appellant's mother was not on speaking terms with her sister for fifteen or sixteen years before her death, and that appellant married a man who was objectionable to the Connors and that she was thereby estranged from them and did not visit them for eight years prior to their death, fully explains why the Connors omitted appellant from their wills. Whatever the intention of the Connors at the time they took Katherine into their home, the proof of what was said and done at the time is not of such a character as will justify a decree for specific performance of an oral contract to convey land. In order to take such contract out of the Statute of Frauds the contract must be clear and definite and unequivocal in its terms and it must be clearly and satisfactorily proved. It is indispensable that the acts done in performance of the contract

shall be referable to the contract, alone, and shall have been done in performance of it. (*Lonergan* v. *Daily,* 266 Ill. 189; *Kane* v. *Hudson,* 273 id. 350; *Weir* v. *Weir,* 287 id. 495; *Crawley* v. *Howe,* 291 id. 107.) The proof of this contract rests almost wholly upon the testimony of the appellant's mother. The agreement is alleged to have been made thirty-two years before the testimony was taken before the master. Mrs. Flanagan stated that nothing more was said about the agreement from the time it was made until after the death of the Connors. Her statement of the terms of the contract is indefinite and somewhat contradictory. Furthermore, the agreement is not one likely to be made by a couple of the age of the Connors. It is not natural that they would agree to give all their property to a child taken into their home while they were still of that age when it might be reasonably expected that children would be born to them. We agree with the master that the proof in the record was wholly insufficient to warrant a decree of specific performance.

Appellant contends that appellees are in no position to interpose the Statute of Frauds as a defense, on the theory that they had no interest in the property involved and were not in privity with any of the parties at the time the agreement was made. Two of appellees are executors and trustees and the others are legatees and devisees under the will of John Connors. They claim through Connors and are not strangers to the suit. In nearly every case of this character which has been considered by this court the Statute of Frauds has been pleaded by parties standing in the same relation to one of the parties to the alleged agreement as appellees stand here, and it has always been recognized by this court that they had the right to make the defense. In *Sonnemann* v. *Mertz,* 221 Ill. 362, it was held that an instruction in an action in ejectment was erroneous which excluded heirs and privies of the parties to a parol agreement from taking advantage of the Statute of Frauds.

Appellees further contend that Mary Flanagan, mother of appellant, was not a competent witness, but the conclusion we have reached makes it unnecessary to consider and decide this question.

The decree of the superior court is affirmed.

*Decree affirmed.*