Edgar F. Hazleton, S.
The executors of the late Marshall Field have petitioned for instructions as to whether two claims made against the estate, based upon alleged oral charitable subscriptions given to the claimants by the decedent during his lifetime, are enforcible against the estate.
Although the executors formally have rejected these claims, they have not taken the position that they are unenforeible. Because of the substantial amounts involved and the fact that neither the executors nor the claimants could produce any written commitment signed by the decedent personally in support of his alleged promises, they properly felt constrained to reject these claims and submit to the court the facts relevant to these transactions.
In addition to the undisputed facts, as set forth in the petition, Marshall Field, Jr., the son of the decedent and the residuary legatee under his father’s will, has submitted affidavits in which, inter alia, he has verified the making of the oral promises by decedent to the Presbyterian-St. Luke’s Hospital and to the University of Chicago as hereinafter set forth.
The first claim to be considered is that of the Presbyterian-St. Luke’s Hospital of Chicago in the amount of $50,000, which arises out of an oral pledge or promise allegedly made by the decedent in New York City on or about September 29, 1956, to give that sum to the hospital for the purposes of its “ Development Program ” then under way. Mr. Field died on November 8,1956 and during the short interval of approximately five weeks *429 between the date of making the pledge or promise and the date of death, no payment was made.
There was no writing evidencing this oral promise except for a notation made in the decedent’s records. The fact that the decedent actually made the oral promise is established by the affidavit of Marshall Field, Jr., who is a trustee of the hospital, wherein he states in part:
“ Affiant, as such Trustee and on behalf of said Hospital, on or about September 29, 1956 in New York, N. Y. discussed with his father what gifts he and his father wished to make for the purpose of said Development Program, and, as a result of such discussion, each promised the other to give $50,000 to said Hospital for such purposes, his father’s promise being based in large part on affiant’s promise and affiant’s promise being-based in large part on his father’s promise. Affiant has evidenced his promise so made by a written pledge dated January 21, 1957 to give the sum of $50,000 or property of that value to said Hospital in furtherance of its Development Program.
“ Affiant further states that he and Ms father understood that said Hospital would rely on their promise in incurring- obligations and seeking the gifts and promises of others to further its Development Program.”
Subsequent to the foregoing conversation between the decedent and his son, the maMng of the pledge was noted in decedent’s personal records maintained at his office in Chicago. On all the proof submitted, I find that the hospital, in reliance upon tMs and similar pledges, proceeded with its plan of expansion and spent and obligated itself for large sums of money in connection therewith. Under the foregoing facts, it becomes necessary for this court to determine first whether the laws of the State of New York or those of the State of Illinois are controlling. In New York, charitable subscriptions have been upheld generally on the theory that they constitute a unilateral offer of a donor to make a gift in futuro which, when accepted by the donee charity by the incurring of liability or detriment by the latter, ripens into a binding contractual obligation of the donor and enforcible against him. (I & I Holding Corp. v. Gainsburg, 276 N. Y. 427; Matter of Eckel, 124 N. Y. S. 2d 448; Liberty Maimonides Hosp. v. Felberg, 4 Misc 2d 291; Matter of Lord, 175 Misc. 921.) Under the rationale of the Gainsburg case (supra, p. 433), I am impelled to hold that the decedent’s promise was only a unilateral offer to contract which needed acceptance by the hospital through its performance of acts in reliance thereon or similar detriment.
*430 Under such a theory it is clear that the offer, if accepted, was accepted by the reliance of the hospital on the pledge and by the performance of acts pursuant to such reliance. And since all such acts by the hospital were performed in Illinois, whether or not a binding contract resulted is dependent on the laws of that State. (Auten v. Auten, 308 N. Y. 155; Rubin v. Irving Trust Co., 305 N. Y. 288; Restatement, Conflict of Laws, § 323 et seq.)
The law of Illinois appears to be substantially similar to that of New York regarding the enforcibility of charitable subscriptions. Further, the Statutes of Frauds of both New York and Illinois insofar as they affect the validity of this transaction, are not in conflict and in the absence of proof to the contrary I must assume that the law of Illinois is the same as that of New York. (International Text Book Co. v. Connelly, 206 N. Y. 188, 201.)
The law of Illinois on the enforcibility of a charitable subscription is stated by its appellate court in Matter of Drain (311 Ill. App. 481), as follows (p. 484): “ if the promisee on the faith of the subscription, and before its withdrawal, performs some act such as the expenditure of money or incurring liabilities which are enforcible, in furtherance of the enterprise the promisor intended to assist or promote, consideration for the subscription is then supplied, and the same is thereafter deemed to be valid, binding and enforcible.”
There, the court also enunciated (p. 484) the public policy of Illinois toward charitable subscriptions: ‘ ‘ Courts lean toward sustaining such contracts when the same may be done without violating established rules of law. Many of our most beneficent institutions are largely maintained by virtue of voluntary contributions from those who are disposed to encourage and promote such work. Trustees of the Methodist Episcopal Church of Illiopolis v. Garvey, 53 Ill. 401.”
Although the promise of the decedent was oral, the making of his offer to the hospital has been proven by Marshall Field, Jr., the residuary legatee in this estate, whose pecuniary interest will be diminished in the event that the estate is obligated to pay this charitable subscription of $50,000. Here, too, the obligation of the decedent was noted in his personal records maintained in his Chicago office. Although the record is not clear, it may be fairly inferred that these personal records of the decedent were maintained in the ordinary course of business and that such entry therein was made by the decedent personally or by an authorized agent. (Cf. Rosene v. Rosene, 311 Ill. App. 541.) *431 The testimony of Marshall Field, Jr., being clearly against his personal pecuniary interest, is not barred under either Illinois or New York law. This testimony anent the making of the oral promise is likewise admissible to explain the notation regarding the charitable subscription made in the decedent’s personal records either by him or an authorized agent, since, on the facts here presented, a sufficient connection between the oral promise and this memorandum has been established in respect of the same subject matter or transaction. (Rose v. Dolejs, 1 Ill. 2d 280; Rosene v. Rosene, supra; Lambe v. Manning, 171 Ill. 612. Cf. Crabtree v. Elisabeth Arden Sales Corp., 305 N. Y. 48, 55; Matter of Lord, 175 Misc. 921; Tioga County Gen. Hosp. v. Tidd, 164 Misc. 273.)
In summary, there is ample undisputed evidence that the decedent made the claimed charitable pledge to the hospital and that the latter, in reliance on such promise, together with others, continued to proceed with the construction of a hospital pavilion and other structures at a cost of about $7,500,000, was obligated to pay the cost thereof, and that at the time of decedent’s death, this work was approximately 20% completed.
Accordingly, I believe that the claim of Presbyterian-St. Luke’s Hospital in the amount of $50,000 is a valid and enforcible charge against the estate of the decedent.
The University of Chicago also filed a claim against this estate for $59,682. - The facts are not in dispute. Prior to December 9, 1954 in Chicago, the decedent orally authorized his son, Marshall Field, Jr., to pledge on his behalf the sum of $100,000 to the University of Chicago for the purposes of its fund-raising campaign, then in progress. Marshall Field, Jr., acting as the decedent’s agent pursuant to the foregoing authorization from his father, orally communicated the decedent’s pledge to Edward L. Byerson, a trustee of the University of Chicago. By letter dated December 9, 1954, Marshall Field, Jr. confirmed the foregoing oral pledge of the decedent, stating in part as follows:
“ Dear Mr. Byerson:
This is a brief note to confirm what I told you on the telephone the other day — namely, that my father and I would attempt to put together a half a million dollar package for the forthcoming University of Chicago fund raising campaign. This amount would be given over a five year period. The breakdown of this would be:—
1. My own personal contribution would be $50,000 or $10,000 a year.
*432 2. My father’s personal contribution would be $100,000 or $20,000 a year.
3. Field Enterprises, Inc. including the newspaper, would be $100,000 or $20,000 a year.
4. The Foundation would be $250,000 or $50,000 a year.
* * #
Sincerely yours,
/s/ Marshall
In their petition, the executors concede that two payments on account of this pledge were made on behalf of the decedent during his lifetime. The first such payment was made about April 12, 1955 by the transfer to the university of securities owned by decedent having a value of $20,147.50 and a second payment on account made about July 10, 1956, consisting of securities valued at $20,170.50.
Under the New York authorities hereinabove cited with respect to the claim of the Presbyterian-St. Luke’s Hospital, it is clear that the validity of this contract is also governed by the law of Illinois. Unlike the claim of the Presbyterian-St. Luke’s Hospital, the pledge of the decedent to the University of Chicago was by its terms to be made over a period, of five years and had in fact been partially performed. In addition, the claim is buttressed by the letter of Marshall Field, Jr., in which he appears to have been acting as his father’s agent. Thus, it is clear that the charitable pledge of the decedent, having been relied upon and accepted by the University of Chicag’o as evidenced by their continuance of the fund-raising campaign, became a valid contract enforcible against the decedent in his lifetime. (Matter of Drain, 311 Ill. App. 481, supra.)
The executors in their petition have by implication raised the defense of the Statute of Frauds. Although this defense is usually a personal defense, executors, under Illinois law, may assert such a defense on behalf of a decedent. (Bent v. Burley, 299 Ill. 606.) Under elementary principles, as fiduciaries they are under a duty to the estate to do so. However, the letter of Marshall Field, Jr., dated December 9, 1954, written as the decedent’s agent and the subsequent ratification of the commitment contained therein by the decedent is sufficient under Illinois law to defeat such a defense. (Perry v. Nevin Hotel Co., 349 Ill. App. 22; cf. O’Hara v. Murphy, 196 Ill. 599.) Quite apart from the effect of the letter of December 9, the uncontradicted testimony by Marshall Field, Jr. as to the making of *433 the oral pledge by the decedent, coupled with the part performance thereof by the payments made by the decedent in his lifetime, is sufficient to remove the transaction from the statute. Furthermore, the proven reliance upon the oral promise by the university under these facts would require the invocation of promissory estoppel, preventing the decedent or his privies from raising any defense based on the Statute of Frauds. Such a result is clearly indicated with respect to charitable subscription contracts which are looked upon with peculiar favor by both the Illinois and New York courts. (Hill v. Bowen, 8 Ill. 2d 527; Anson v. Haywood, 397 Ill. 370; McGrory v. McCormick, 400 Ill. 203; Raser v. Johnson, 9 Ill. App. 2d 375; Gray v. Schoonmaker, 119 F. 2d 1010.)
I find that the decedent made the pledge in question, made partial payments thereunder and that the donee, in reliance upon the promise of the decedent-donor, as well as upon the promises of other donors, incurred certain obligations. Accordingly, I hold that decedent’s oral promise is valid and enforcible and that the pledge does not come within the prohibitions of the Illinois Statute of Frauds and Perjuries. After deducting the partial payments, the balance of $59,682 remains due the university from this estate.
Both of the foregoing claims are accordingly allowed and the executors are instructed to pay the same.
Settle decree on notice.