## (January 14, 1982)

■ ADRIENNE T. ZIMMERMAN, Respondent-Appellant, v THEODORE J. ZIMMERMAN, Appellant-Respondent. — Order and judgment (one paper), Supreme Court, New York County (Kassal, J.), entered on April 18, 1980, affirmed, without costs and without disbursements. Present — Murphy, P. J., Kupferman, Sandler, Markewich and Lupiano, JJ. Sandler and Markewich, JJ., concur in a memorandum by Sandler, J.; Kupferman, J., concurs in a separate memorandum; and Murphy, P. J., and Lupiano, J., dissents in a memorandum by Lupiano, J., all as follows.

Sandler, J. (concurring). These are cross appeals from a judgment entered after a jury trial in favor of the plaintiff, defendant's daughter, in the amount of $6,709, plus interest and costs, the principal amount representing unpaid tuition fees incurred by plaintiff during attendance at Adelphi University for her second and third years. The judgment was entered following the jury's affirmative response to the following question put by the trial court: "On September 5, 1975, did the defendant make a promise as defined by the court to pay for the plaintiff's college education which he should have reasonably expected that she would rely upon and did she in fact rely on the promise by

taking substantial action to her detriment or disadvantage?" The evidence convincingly confirms that defendant had in fact promised that he would pay his daughter's tuition fees if she attended a local college within commuting distance, and that plaintiff had done so in reliance on that promise. Indeed the defendant in effect acknowledged that he had made such a promise in September of 1975, had reaffirmed it during the summer of 1976, and had paid the first semester's tuition in August, 1976. Thereafter, consistent with ·the promise, defendant paid in installments the tuition for the second semester of the first year. The principal issue on this appeal arises out of defendant's failure to pay the tuition for plaintiff's college attendance for the second and third years, an omission which has resulted in her legal obligation to pay those sums to the college. We do not disagree with the dissenting opinion's able analysis of section 5-701 (subd a, par 1) of the General Obligations Law and its description of the development and scope of the doctrine of part performance with regard to agreements that are "not to be performed within one year from the making thereof".[*] Our disagreement is rather with the dissenting opinion's interpretation of the nature of the promise, which assumes erroneously that plaintiff and defendant had entered into a mutually binding agreement under which plaintiff was obligated to attend a local college for four years, and the defendant was obligated to pay tuition fees for that entire period. The genesis of this interpretation may be found in the complaint where it served as a foundation for an effort to recover far more from defendant than the limited sum embraced in the judgment. The reality disclosed by the record, whichever of the several versions of conversations is accepted, is very different. The defendant promised to pay the plaintiff's tuition fees if she attended a local college. It was implicit in that promise that he would pay such fees only as long as she continued to attend a college within commuting distance. Even if one credits plaintiff's testimony that she agreed to go to such an institution, we are not persuaded that plaintiff assumed a legally enforcible obligation to attend the college for four years. Having commenced her matriculation at Adelphi, plaintiff at all times had the right to discontinue her attendance for any of the reasons that commonly lead many college students either to drop out of school or to change schools to one that seems to them more appropriate or congenial. Moreover, in our view of defendant's promise, and consistent with the principles of promissory estoppel underlying the jury's verdict, defendant reserved the right at any time to terminate his undertaking with regard to the payment of tuition fees for future semesters. Under the circumstances presented, we reject, as did the trial court, plaintiff's thesis that once she had started to attend Adelphi, defendant was bound to pay plaintiff's tuition fees ·as long as she continued to matriculate there. Providing only that defendant gave appropriate notice to plaintiff, so that she could timely make other arrangements, thereby avoiding further substantial detrimental reliance, he at all times had the option to terminate or limit his future obligation. For these reasons defendant's promise was capable of performance within one year and therefore its enforcement does not violate section 5-701 (subd a, par 1) of the General Obligations Law. (*North Shore Bottling Co. v Schmidt & Sons,* 22 NY2d 171; *Nat Nal Serv. Stas. v Wolf,* 304 NY 332; see *Duncan v Clarke,* 308 NY 282, 286.) Defendant did not withdraw his promise during the plaintiff's second and third years at college. Plaintiff testified, and the defendant did not deny, that he repeatedly assured her during her second and third years at college that he would pay the tuition fees when he had the money. The issue raised by this aspect of the testimony was not submitted by the trial court to the jury on the

---

[*] As to the dissenting opinion's interesting discussion of the law of fraudulent representation, we are unable to perceive its relevance to any issue presented on this appeal.

apparent view that it was not embraced within the pleadings. We nonetheless believe that these separate repetitive promises, not contradicted by the defendant during his testimony and confirmed by his admission that on at least one occasion he so assured the Adelphi bursar, independently support the judgment. For it is readily apparent that these promises, unmistakably keyed to the payment of current tuition charges, were each performable within a single year, and that they were relied upon by plaintiff. (*Nat Nal Serv. Stas. v Wolf, supra,* 304 NY 332.) The order and judgment, Supreme Court, New York County (Kassal, J.), entered April 18, 1980, awarding plaintiff $6,709, plus interest and costs after a jury trial, should be affirmed, without costs.

Kupferman, J. (concurring). I would affirm. Justice Sandler's concurring memorandum and the dissent fairly set forth the facts, although certain aspects should be emphasized. The defendant paid plaintiff's tuition for the first year at college and terminated payment only because of his conclusion that he could not afford to continue to pay. In fact, as the dissent indicates, he had told the bursar's office at Adelphi University that, as to his daughter's unpaid tuition, he did not have the money to pay at the time but would try to pay in the future. The amount awarded by the jury covers the unpaid tuition for the second and third years of the plaintiff's college education. Although she sued for future tuition and damages, etc., and cross-appeals, we affirm here only with respect to those two years of unpaid tuition for which she received her education. In the view we take of this matter, the interesting analysis in the dissent of the Statute of Frauds and the doctrine of promissory estoppel becomes irrelevant. The father indicated his acceptance of attendance of the daughter at college. This could be considered part of his duty of maintenance and support. The oral arrangement which the plaintiff daughter claims was made with her father, merely substantiates his recognition of his obligation to include college attendance as part of support. (See *Matter of Roe v Doe,* 29 NY2d 188.) The current tuition for which the daughter became obligated to Adelphi University was, therefore, the obligation of the father. (*Matter of Kotkin v Kerner,* 29 AD2d 367; cf. *Connolly v Connolly,* 83 AD2d 136.) Under the circumstances, the judgment, as limited to the arrears in tuition for the two college years, should be affirmed, without costs.

Lupiano, J. (dissenting). Plaintiff in her "petition," alleges that on September 5, 1975, she was under the age of 18 and entered into an oral contract with defendant, her father, whereby the latter agreed to pay for her college tuition and related expenses when she attended college and to buy her a motor vehicle with which to commute to such college provided plaintiff continued to reside at home with the family unit. At this time plaintiff was in her senior year in high school. It is further alleged that in reliance on this agreement, plaintiff enrolled at Adelphi University commencing September, 1976, and that the defendant paid the tuition for her first year (two semesters) at college. It is also alleged that the defendant having experienced matrimonial difficulties with plaintiff's mother, his wife, refused to pay tuition for the second and third year resulting in plaintiff's being in arrears for tuition in the approximate sum of $6,700. Plaintiff asserts that she relied on her father's promise to pay college tuition by not entering any other trade or vocation and by residing at home and commuting from house to college. She seeks to have her father pay for the tuition arrears, to pay future tuition including graduate school (law school) and related expenses or alternatively $100,000 in damages for her detrimental reliance in attending college and $500,000 for loss of her undergraduate and graduate school education. Defendant in his answer denies for the most part plaintiff's allegations and admits that his wife, plaintiff's mother, obtained a divorce from him on the ground of abandonment (decision on or about May 3, 1979), that he paid plaintiff's tuition for the first year at college and subse-

quently advised plaintiff, his daughter, that he could not afford to continue to pay for her college tuition and that she should obtain employment and he would supplement the moneys she earned with some moneys of his own in defrayment of the tuition. At trial plaintiff testified that the alleged oral agreement in September, 1975 had occurred at the dinner table in the presence of her mother and the housekeeper and that during her second and third years at college her parents were involved in a "nasty divorce." At the trial's conclusion, the trial court charged the jury to render a special verdict by determining (1) whether on September 5, 1975, the plaintiff and defendant entered into an agreement whereby the defendant agreed to pay for the plaintiff's college education and the plaintiff has performed her part of the contract, and (2) whether on said date the defendant made a promise to pay for plaintiff's college education which he should have reasonably expected that she would rely on and whether plaintiff did in fact rely on the promise by taking substantial action to her detriment. The jury's verdict was "no" as to question one and "yes" as to question two. We need not confront the dilemma posed by the trial court's integrating two separate factual issues in question one for the fact finders so that uncertainty arises as to whether the jury found that no oral agreement was entered into or found that such agreement was entered into, but plaintiff did not perform her part, because, in any event, the oral agreement is clearly violative of the Statute of Frauds (General Obligations Law, § 5-701) and is, therefore, unenforceable as a matter of law. It is noted that the doctrine of part performance where the plaintiff has partly performed the oral contract in good faith in reliance on its being performed by the party now seeking to avoid it does not benefit plaintiff herein for two reasons: first, the "doctrine that part performance may take the case out of the Statute of Frauds developed in courts of equity. This doctrine, however, was applied and still is, only to oral agreements for the transfer of an interest in land, and had its origins in equity prior to the Statute of Frauds * * * However, the acts of part performance relied on as taking the case out of the Statute of Frauds in equity must be acts explainable only on the alleged oral agreement having been made. In short, the part performance must be of such a character that there would be no sense in it unless the promise had been made" (Whitney, Law of Contracts, § 75, p 242 [6th ed]; see 3 Williston, Contracts [3d ed], § 533; *Sleeth v Sampson,* 237 NY 69; *Burns v McCormick,* 233 NY 230). "Only full performance by both parties, and no such claim is or can be made here, is sufficient to avoid the Statute of Frauds (*Tyler v Windels,* 186 App Div 698, affd 227 NY 589; *Deutsch v Textile Waste Merchandising Co.,* 212 App Div 681; *Burns v McCormack,* 233 NY 230; *Wahl v Barnum,* 116 NY 87)." (*Pollard v Meyer,* 61 AD2d 766, 767.) Even if the doctrine of part performance were available in this matter, plaintiff's performance is clearly not "unequivocally referable" to the promise she attributes to the defendant so as to invoke the exception to the requirement of a writing. Regarding the doctrine of promissory estoppel as it pertains to the instant matter, it appears that in New York it is applied "primarily as a substitute for consideration or as an exception to the requirement of consideration for a contract" and "has been applied * * * to charitable subscriptions" and to family and marriage settlements (21 NY Jur, Estoppel, § 27; see 9 NY Jur, Contracts, § 66). The trend in certain other jurisdictions to employ the doctrine of promissory estoppel beyond its traditional use as a substitute for consideration, to wit as a device to defeat the operation of the Statute of Frauds has not yet obtained in New York except in very few well-defined instances (see Comment Note — Promissory Estoppel as Basis for Avoidance of Statute of Frauds, 56 ALR3d 1037; 44 Fordham L Rev 114). Thus, analogy to the charitable subscription cases enabled the court in

*Matter of Field* (11 Misc 2d 427) to invoke promissory estoppel thus preventing the promissor or his privies from raising a defense based on the Statute of Frauds. However, as a general proposition promissory estoppel appears not to serve in this state as a basis to avoid the Statute of Frauds (see *Kahn v Cecelia Co.,* 40 F Supp 878 applying New York law; see, also, *Olympic Jr., Inc. v David Crystal, Inc.,* 463 F2d 1141 applying alternatively New York and New Jersey law), especially in the absence of unconscionable injury (see *Monaco v Lo Greco,* 35 Cal 2d 621). A litigant such as plaintiff herein is not left without a remedy, to wit the tort of fraudulent representation (see *Channel Master Corp. v Aluminum Ltd Sales,* 4 NY2d 403). "To maintain an action based on fraudulent representations, whether it be for the rescission of a contract or, as here, in tort for damages, it is sufficient to show that the defendant knowingly uttered a falsehood intending to deprive the plaintiff of a benefit and that the plaintiff was thereby deceived and damaged * * * The essential constituents of the action are fixed as representation of a material existing fact, falsity, *scienter,* deception and injury" (*Channel Master Corp. v Aluminium Ltd Sales, supra,* pp 406-407). The statement or representation must be of an *existing fact* as opposed to expressions of future expectation. Where such cause is pleaded and proved, the fact that the Statute of Frauds may bar recovery in contract does not serve to shield from liability in tort. "If the proof of a promise or contract, void under the statute of frauds, is essential to maintain the action, there may be no recovery, but, on the other hand, one who fraudulently misrepresents himself as intending to perform an agreement is subject to liability *in tort* whether the agreement is enforceable or not * * * The policy of the statute of frauds is 'not directed at cases of dishonesty in making' a promise * * *; never intended as an instrument to immunize fraudulent conduct, the statute may not be so employed" (*Channel Master Corp. v Aluminium Ltd Sales, supra,* p 408). Viewing plaintiff's "petition" liberally as alleging a cause of action for fraudulent representation, such cause fails on this record. The defendant father's alleged misrepresentation relates, as we see it, only to future expectations. The purported fraudulent promissory representation that he would pay his daughter's college tuition when and if she attended college provided she stayed at home and commuted daily to such college did not implement existing contractual obligations or deal with matters completely under the defendant's control (cf. *Sabo v Delman,* 3 NY2d 155; *Channel Master Corp. v Aluminium Ltd Sales, supra*). However, assuming the misrepresentations, as alleged, were statements of a present intention as distinguished from expressions of future expectation, the proof at trial did not disclose that the father fraudulently stated to the daughter that he would pay her college tuition under certain conditions *when he knew all the time* that he would not do so. "While 'mere promissory statements as to what will be done in the future are not actionable' (*Adams* v. *Clark,* 239 N. Y. 403, 410), it is settled that, if a promise were actually made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of 'a material existing fact' " (*Sabo v Delman, supra,* p 160). For plaintiff to recover she must demonstrate that her father had "fraudulently and positively as with personal knowledge stated that something was to be done *when he knew all the time* it was not to be done and that his representations were false. It is not a case of prophecy and prediction of something which it is merely hoped or expected will occur in the future, but a specific affirmation of an arrangement under which something is to occur, when the party making the affirmation knows perfectly well that no such thing is to occur" (*Ritzwoller v Lurie,* 225 NY 464, 467; emphasis supplied). In the matter before us it is not disputed that defendant paid for plaintiff's first-year tuition and his failure to pay any

further tuition occurred in the context of the breakup of the family unit. Also defendant testified at trial that his effort to pay such tuition rested on his ability to pay and that as to his daughter's unpaid tuition, he had told the bursar's office that he didn't have any money to pay the bills at that time, but would try to pay them in the future. Defendant denied ever making a contract with his daughter to pay such bills. On this record we conclude that plaintiff does not have an actionable claim.[*] The analysis set forth in the majority concurring opinion is not embraceable within the pleadings and mischaracterizes the dissent. The oral agreement which serves as the subject of this dissent is that set forth in the complaint and sued upon by plaintiff; it is the agreement urged by plaintiff and the agreement testified to at trial. The terms of the agreement are clear when viewed against the circumstances of its genesis. Plaintiff, while in high school desired to be assured that defendant, her father, would provide her with a college education. To obtain an undergraduate college degree absent special circumstances, it is required that full-time students be enrolled at the institution of higher learning for four years. Defendant agreed to provide the expenses for such education for his daughter on condition that she attend a college within daily commuting distance of their home, i.e., a "local" school. Plaintiff fulfilled the condition and is suing her father for breach of the oral agreement, i.e., his failure to provide her with a college education by not paying her tuition at the "local" school for the second and third years. Of course, the subject matter of the contract — the obtaining of a college degree at a "local" school could be frustrated by plaintiff's withdrawing from such school and either enrolling in some other college or not pursuing further studies. This of course would not constitute performances of the contract on plaintiff's part. Thus, in order to frustrate the application of the Statute of Frauds, the concurring majority opinion fashions at one and the same time an oral agreement purportedly terminable at will by either party and three separate oral agreements for each of the plaintiff's first three years of study at the "local" college. It suffices to note that if the agreement was terminable at will by both sides, no security or assurance was afforded plaintiff that her college tuition would be paid by her father despite the fact that she enrolled in a "local" college. Indeed, the agreement would appear to be illusory. Also, if the agreement was terminable at will, then the record amply supports the defendant's argument that he is not bound to pay under the agreement, i.e., he stated with respect to the tuition expenses accrued by plaintiff for her second and third year that he would try to pay same, but was not obligated under an agreement to pay for same. Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Kassal, J.) entered April 18, 1980, after a jury trial, awarding plaintiff, *inter alia,* the amount of $6,709 (unpaid tuition for college undergraduate courses), should be reversed, on the law and on the facts and the complaint is dismissed, with costs and disbursements.

---

[*] The instant action commenced by plaintiff is not a proceeding seeking support within the jurisdiction of the Family Court, but is for breach of contract and fraudulent representation commenced in the Supreme Court. Accordingly, the observations of the majority while perhaps relevant in the context of a support proceeding are not germane to the issues raised in the instant action sounding in contract and in fraud. Also it is noted that plaintiff was born December 18, 1957, which raises a serious question as to the propriety of the majority's conclusion awarding plaintiff tuition for the *full two years* — her "sophomore" and "junior" years commencing September, 1977 and 1978, respectively.